

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-1997

# United States v. Farrell

Precedential or Non-Precedential:

Docket
96-1860

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Farrell" (1997). *1997 Decisions.* Paper 228.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/228

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 24, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-1860

UNITED STATES OF AMERICA

v.

WILLIAM FARRELL,
        Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Criminal Action No. 95-cr-00453-1)

Argued May 6, 1997

BEFORE: STAPLETON, LEWIS and CAMPBELL,*
Circuit Judges

(Opinion Filed September 24, 1997)

        Michael R. Stiles
        U.S. Attorney
        Walter S. Batty, Jr.
        Assistant U.S. Attorney
        Thomas R. Perricone (Argued)
        Assistant U.S. Attorney

        Office of the U.S. Attorney
        615 Chestnut Street, Suite 1250
        Philadelphia, PA 19106
         Attorneys for Appellee

_____

* Honorable Levin H. Campbell, Senior United States Circuit Judge for
the First Circuit, sitting by designation.

        Peter Goldberger (Argued)
        Jan Armon
        50 Rittenhouse Place
        Ardmore, PA 19003
         Attorneys for Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This case requires us to interpret the phrase "corruptly persuades" in the federal witness tampering statute. That statute makes it a crime to attempt to "corruptly persuade" someone in order to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. S 1512(b)(3). William Farrell was convicted under the statute for attempting to dissuade a coconspirator from providing information to investigators of the United States Department of Agriculture (USDA) about Farrell's involvement in a conspiracy to commit the federal offense of selling adulterated meat. Farrell appeals his conviction on the ground that the conduct for which he was convicted did not constitute "corrupt persuasion" within the meaning of the statute. We agree and accordingly will reverse Farrell's conviction and remand for further proceedings consistent with this opinion.

I.

Before his arrest, Farrell drove a truck for a meat rendering plant. His job required him to pick up scraps and sweepings from various meat markets and deliver them to his employer's meat rendering facility for conversion into non-food products. Beginning in June 1991, Farrell began removing 10- to 25-pound bottom rounds from the cans of scrap and waste he had retrieved and selling the meat to the Bachetti Brothers Meat Market for 50c per pound. Bachetti Brothers would then grind up the meat and sell it to the public as hamburger.

On February 13, 1992, USDA investigators videotaped Farrell carrying a barrel of meat from the back of his truck into the Bachetti Brothers Market. A few days later, USDA Agent James Zacher confronted Farrell and showed him the videotape. Agent Zacher asked Farrell if he would cooperate with a USDA investigation into Bachetti Brothers by wearing a body wire, but Farrell denied any wrongdoing and refused to cooperate. Agent Zacher then went to Bachetti Brothers and showed the videotape to Louis Bachetti, the market's manager, and his mother, Rose, who owned the market. Within a week, the Bachetti family had decided to cooperate with the investigation. In exchange for their cooperation, the USDA did not charge anyone who owned or worked at Bachetti Brothers with a crime.1

After Agent Zacher showed him the videotape, Farrell spoke with Louis Bachetti about the USDA investigation on

six occasions. On February 19, 1992, Farrell called Bachetti and told him about the videotape, but insisted that he did not know what the agents were talking about. Later that day, Farrell called Bachetti a second time and asked him if he had seen the tape and what he had told the agents. Bachetti told Farrell that he had told the agents nothing. Less than a week later, Farrell went to Bachetti Brothers and told Bachetti that they would be okay if they "stuck together." Shortly thereafter, Bachetti called Farrell and told him that he was going to cooperate with the USDA, but Farrell denied knowing what Bachetti was talking about. A few days later, Farrell called Bachetti and told him that he was going to admit to the USDA agents that he was bringing meat into Bachetti Brothers, but he was going to say that he was keeping the meat for his dogs. Farrell suggested that he and Bachetti "stick together" on the story about the meat being for Farrell's dogs. Finally, in early March 1992, Farrell approached Bachetti in the Bachetti Brothers parking lot and told him that he planned to stick to the story about the meat being for his dogs, and that he wanted Bachetti to do the same. Farrell then said to Bachetti, "If you crucify me, I'll have to turn around and crucify you." Bachetti and the district court interpreted this

_____

1. The Bachetti Brothers corporation was indicted and pleaded guilty to selling adulterated meat and will be subject to a fine.

statement to mean that if Bachetti cooperated with the USDA and told the agents about Farrell's involvement in selling adulterated meat, Farrell would tell the agents what he knew about Bachetti's illegal activities.

Farrell was indicted on one count of selling adulterated meat on August 24, 1995 and was arrested a few weeks later. After Farrell filed pretrial motions, a superseding indictment was returned adding a count of tampering with a witness. A second superseding indictment, returned on January 16, 1996, charged Farrell with conspiracy to sell adulterated meat, sale of adulterated meat, and tampering with a witness. On June 24, 1996, Farrell pleaded guilty to the adulterated meat counts, but chose to go forward with a bench trial on the witness tampering count.

The witness tampering count alleged that Farrell had violated 18 U.S.C. S 1512(b)(3) by using intimidation and attempting corruptly to persuade Louis Bachetti to withhold information from or provide false information to agents of the USDA with the intent to hinder, delay or prevent communication by Bachetti to USDA agents of information

relating to the commission or possible commission of a federal offense, the sale of adulterated meat. After the bench trial, the district court "conclude[d] that under the evidence, Mr. Farrell did attempt to persuade Louis Bachetti to withhold information, with the requisite intent to [delay], hinder, o[r] prevent communication by Bachetti to a Federal law officer." App. at 98. The court further found that "what was meant [by Farrell's `I'll have to crucify you' comment] was that if you tell the Government, I'll tell the Government what I know about you." App. at 100. The district court entered a verdict of guilty on the witness tampering count and filed a Bench Trial Memorandum. The Memorandum included findings that (1) Farrell "did not knowingly use intimidation" to try to prevent Bachetti's communication with USDA agents and (2) Farrell "did attempt corruptly to persuade Louis Bachetti to withhold information from agents of the [USDA] with the intent to hinder, delay, or prevent the communication of information relating to the commission or possible commission of a Federal offense." Bench Trial Memo. at 1 (emphasis added). The court sentenced Farrell to 12 months and 1 day of imprisonment and a $3,000 fine.

Farrell appeals his conviction on the witness tampering charge. He does not dispute the district court's factual findings, but contends that those findings and the supporting evidence do not establish that he committed the crime of witness tampering through "corrupt persuasion" because the "corruptly persuades" clause of the witness tampering statute does not apply to an attempt to persuade a coconspirator not to disclose information about the conspiracy to federal investigators.

II.

The federal witness tampering statute makes it unlawful for any person to:

>     knowingly use[ ] intimidation or physical force, threaten[ ], or corruptly persuade[ ] another person, or attempt[ ] to do so, or engage[ ] in misleading conduct toward another person, with intent to--
>
>     * * *
>
>     (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense ...

18 U.S.C. S 1512(b)(3). The statute does not define "corruptly persuades," but does explain that "the term `corruptly persuades' does not include conduct which would be misleading conduct but for a lack of a state of mind." 18 U.S.C. S 1515(a)(6). This explanation is irrelevant here, however, because Farrell does not dispute that he possessed the requisite intent to prevent Bachetti from communicating with the USDA investigators and the government does not contend that Farrell engaged in any "misleading conduct" with respect to Bachetti.

Without any definitional assistance, we find the phrase "corruptly persuades" to be ambiguous. We agree with Farrell that the phrase cannot mean simply "persuades with the intent to hinder communication to law enforcement" because such an interpretation would render the word "corruptly" meaningless. The Supreme Court has cautioned that courts should give meaning to all statutory

5

terms, especially those that "describe an element of a criminal offense." Ratzlaf v. United States, 510 U.S. 135, 141 (1994) (holding that "willfully," in the context of a statute criminalizing the "willful" violation of the prohibition on structuring cash transactions to avoid bank reporting laws, must be read as imposing an additional element of intent, i.e., knowledge of the unlawfulness of such structuring (as opposed to just knowledge of the reporting laws and intent to avoid them)). However, what meaning should be attributed to the word "corruptly" is not apparent from the face of the statute.2

Nor does the legislative history provide us with much assistance in construing "corruptly" to determine what conduct Congress intended the "corruptly persuades" clause to proscribe. In a Report discussing the amendment adding the "corruptly persuades" clause to the witness tampering statute, the House Judiciary Committee noted that original S 1512(b) did not criminalize "noncoercive conduct that does not fall within the definition of `misleading conduct,' " and explained that the addition of the "corruptly persuades" clause "amend[ed] 18 U.S.C. S 1512(b) to proscribe `corrupt persuasion.' It is intended that culpable conduct that is not coercive or `misleading conduct' be prosecuted under 18 U.S.C. S 1512(b)." H.R. Rep. No. 100-169, at 12 (1987). No explanation of what is meant by "culpable conduct" is provided. The Report does cite, as an example of "culpable corrupt persuasion" that would be punishable under amended S 1512(b), a case involving a defendant who both offered to rewardfinancially a coconspirator's silence and attempted to persuade the

_____

2. The word "corruptly" has several different meanings. Its root, the adjective "corrupt," is defined as "morally degenerate and perverted" and "characterized by improper conduct (as bribery or the selling of favors)." Webster's Ninth New Collegiate Dictionary 294 (1985). The verb "corrupt" has both transitive, as "to change [someone] from good to bad in morals, manners, or actions; ... bribe," and intransitive, as "to become [oneself] morally debased," meanings. Id. at 293. Given these definitions, "corruptly" in S 1512(b) may modify "persuades" to require persuasion through some corrupt means, persuasion of someone to engage in some corrupt conduct, and/or persuasion characterized by some "morally debased" purpose.

6

coconspirator to lie to law enforcement officials about the defendant's involvement in the conspiracy. See id. at 12 & n.25 (citing United States v. King, 762 F.2d 232, 236-37 (2d Cir. 1985)). One court, apparently relying on this citation, has opined that Congress intended the amendment to expand S 1512(b) "to encompass cases where the defendant `corruptly persuades' the witness to testify falsely." United States v. Kulczyk, 931 F.2d 542, 546 n.7 (9th Cir. 1991). We think, however, that the better interpretation of the Report's citation to King is that Congress viewed both types of persuasion in which the King defendant engaged as sufficiently "culpable" or "corrupt" to fall within the proscription of S 1512(b).

Thus, we are confident that both attempting to bribe someone to withhold information and attempting to persuade someone to provide false information to federal investigators constitute "corrupt persuasion" punishable under S 1512(b). Nonetheless, we are hesitant to define in more abstract terms the boundaries of the conduct punishable under the somewhat ambiguous "corruptly persuades" clause. However, we do not think it necessary to provide such a definition here because we are similarly confident that the "culpable conduct" that violates S 1512(b)(3)'s "corruptly persuades" clause does not include a noncoercive attempt to persuade a coconspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the conspiracy to refrain, in accordance with that right, from volunteering information to investigators.

We recognize that the prototypical situation in which an individual may attempt to persuade a coconspirator to exercise his Fifth Amendment right, i.e., that in which an attorney advises a client not to reveal information about his participation in a conspiracy to law enforcement officials, is

expressly excluded from the reach of the statute. See 18 U.S.C. S 1515(c) ("This chapter does not prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding."). However, we do not think that the attorney-client situation constitutes the only type of noncoercive persuasion to withhold information that falls outside the purview of S 1512(b)(3).

A participant in a conspiracy clearly has a right under the Fifth Amendment not to provide law enforcement officials with information about the conspiracy that will incriminate him. See, e.g., United States v. Plescia, 48 F.3d 1452, 1464 (7th Cir. 1995); In re Grand Jury (Markowitz), 603 F.2d 469, 473-74 (3d Cir. 1979); United States v. Johnson, 488 F.2d 1206, 1209 (1st Cir. 1973). Here, where the conspiracy arose from a bilateral commercial relationship in which Farrell sold and Bachetti bought adulterated meat, a disclosure by Bachetti of Farrell's conduct in connection with the conspiracy would necessarily implicate Bachetti as a participant in the conspiracy as well. Thus, Bachetti had a Fifth Amendment right not to disclose information to USDA investigators about his or Farrell's conduct in connection with the adulterated meat. The evidence indicates--and the district court found--that Farrell attempted to persuade Bachetti to exercise that right by refraining from revealing information about the adulterated meat transactions to the investigators. The district court expressly found that Farrell did not employ coercive methods in his efforts to dissuade Bachetti from cooperating with the USDA. Likewise there was no evidence that Farrell engaged in "corrupt" methods such as bribery.

We read the inclusion of "corruptly" in S 1512(b) as necessarily implying that an individual can "persuade" another not to disclose information to a law enforcement official with the intent of hindering an investigation without violating the statute, i.e., without doing so "corruptly." Thus, more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure in order to hinder an investigation. Because we find no basis in the district court's findings on which to conclude that more culpability existed here,3 we believe that

_____

3. In the absence of a privilege, society has the right to the information of citizens regarding the commission of crime, and it can be argued that discouraging another who possessed no privilege from honoring this civic duty involves some culpability not present when coconspirators with

Fifth Amendment privileges converse. For this reason, we express no opinion on the applicability of S 1512(b)(3) to efforts to dissuade someone
who is not a participant in a conspiracy, and accordingly has no Fifth

8

under the most plausible reading of S 1512(b), the conduct in which Farrell was found to have engaged did not constitute "corrupt persuasion." Even if we did not find this the most reasonable reading, however, we would nevertheless find that it is a permissible one and that the rule of lenity requires its adoption in this case. See United States v. Turcks, 41 F.3d 893, 901 (3d Cir. 1994)("The rule of lenity `demands resolution of ambiguities in criminal statutes in favor of the defendant.' ")(quoting Hughey v. United States, 495 U.S. 411, 422 (1990)); United States v. Pollen, 978 F.2d 78, 85 (3d Cir. 1992)("Under th[e] rule [of lenity], when ambiguity in a criminal statute cannot be clarified by either its legislative history or inferences drawn from the overall statutory scheme, the ambiguity is resolved in favor of the defendant.").

The government asks us to rely on cases construing the term "corruptly" in the context of the statute prohibiting the obstruction of justice generally, see 18 U.S.C. SS 1503,4 to hold that the "corruptly persuades" clause proscribes all persuasion that is "motivated by an improper purpose."5

_____

Amendment right, not to reveal information about the conspiracy to federal law enforcement officials. Our opinion addresses only the situation in which the subject of a federal investigation attempts to persuade one who has also participated in the conduct under investigation not to disclose information about that conduct to federal investigators.

4. Section 1503(a) provides:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the
> United States, ... or corruptly, or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration or justice, shall be punished ....

5. The government contends that Farrell's "improper purpose" here was the prevention of Bachetti's communication of information about the conspiracy to sell adulterated meat to USDA investigators. As we have already discussed, however, such a purpose is already an element of the

crime with which Farrell was charged and Congress's inclusion of the word corruptly in S 1512(b)(3) dictates that more than such a purpose is required.

Appellee's Br. at 14-15. The government cites United States v. Thompson, in which the appellant argued thatS 1512(b) was unconstitutionally vague. 76 F.3d 442 (2d Cir. 1996). The Thompson court rejected the appellant's challenge, relying on cases construing "corruptly" in S 1503 to mean "motivated by an improper purpose" in order to give meaning to "corruptly persuades" in S 1512(b). Id. at 452. We decline to follow the Thompson approach because we do not find the use of "corruptly" in S 1503 sufficiently analogous to its use in S 1512(b)'s "corruptly persuades" clause to justify construing the terms identically. As the government recognizes, apparently without appreciating its significance, "corruptly" has consistently been interpreted to provide the intent element of the general obstruction of justice offense defined in S 1503. See , e.g., United States v. Barfield, 999 F.2d 1520, 1524 (11th Cir. 1993); United States v. Bashaw, 982 F.2d 168, 170 (6th Cir. 1992); United States v. Haas, 583 F.2d 216, 220 (5th Cir. 1979). This interpretation of "corruptly" in S 1503 is entirely appropriate given the structure of that statute, which broadly prohibits "corruptly ... influenc[ing], obstruct[ing] or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice." Indeed, if "corruptly" were not so construed in S 1503, the statute would have no element of mens rea. In S 1512(b), however, both "knowing" conduct and some specific intent, described in subsections (1) through (3),6 are expressly required. Thus, because the "improper purposes" that justify the application of S 1512(b) are already expressly described in the statute, construing "corruptly" to mean merely "for an improper purpose" (including those described in the statute) renders the term surplusage, a result that we have been admonished to avoid. See Ratzlaf, 510 U.S. at 141.7

_____

6. Subsections (1) and (2) of S 1512(b) prohibit intimidating, corruptly persuading, or engaging in misleading conduct toward any person with the intent to (1) influence, delay, or prevent testimony in an official proceeding or (2) cause any person to withhold testimony, destroy or mutilate evidence, evade legal process summoning testimony or evidence, or be absent from an official proceeding to which the person has been summoned by legal process.

7. For similar reasons, we also do not, as urged by Farrell, look to cases interpreting "corruptly" in 28 U.S.C. S 7212 to guide our interpretation of

the term in S 1512(b). Section 7212 provides:

10

Accordingly, the cases interpreting "corruptly" in S 1503 do
not compel us to alter our conclusion that Farrell's attempt
to persuade his coconspirator not to reveal information
about the conspiracy did not constitute a violation of
S 1512(b)(3).

III.

The government suggests that even if we conclude that
an attempt to persuade a coconspirator not to reveal
information about the conspiracy to federal law
enforcement officials is not proscribed by the "corruptly
persuades" clause of S 1512(b), we should still affirm
Farrell's conviction on the ground that the evidence of
record indicates that Farrell violated S 1512(b)(3) by
attempting to persuade Bachetti to lie to USDA
investigators about what Farrell was doing when he was
captured on the USDA investigators' videotape. We decline
to accept the government's suggestion.

The indictment alleged that Farrell "did knowingly and
unlawfully use intimidation and did attempt corruptly to
persuade Louis Bachetti to withhold information from or
provide false information to agents of the Department of
Agriculture with intent to hinder, delay, or prevent the
communication by Louis Bachetti to a United States law
enforcement officer of information relating to the
commission of a Federal offense, that is, the sale and
distribution of adulterated meat." App. at 13. Thus, the

_____

  Whoever corruptly or by force or threats of force (including any
  threatening letter or communication) endeavors to intimidate or
  impede any officer or employee of the United States acting in an
  official capacity under this title, or in any other way corruptly
or by
  force or threats of force (including any threatening letter or
  communication) obstructs or impedes, or endeavors to obstruct or
  impede, the due administration of this title, shall[be punished].

As in S 1503, the term "corruptly" provides the intent element of S 7212.
Although some cases have interpreted S 7212's intent element more
narrowly than S 1503's, see, e.g., United States v. Reeves, 752 F.2d 995
(5th Cir. 1985), we do not rely on those cases because they interpret the
term "corruptly" in a different statutory context than S 1512(b).

11

indictment presented four theories of Farrell's alleged violation of S 1512(b)(3): (1) intimidation to withhold information; (2) intimidation to provide false information; (3) corrupt persuasion to withhold information; and (4) corrupt persuasion to provide false information. The district court expressly found that Farrell "did not knowingly use intimidation in regard to the communication by Louis Bachetti," thus rejecting the first two theories. Bench Trial Memo. at 1 (emphasis added). The court found that Farrell did attempt corruptly to persuade Bachetti to "withhold information" from USDA investigators, but it made no finding on the fourth theory, i.e., whether Farrell attempted corruptly to persuade Bachetti to provide false information to USDA investigators.

Despite the district court's failure to make a finding on the "persuasion to lie" theory, the government argues that we should affirm Farrell's conviction on the basis of that theory because there is sufficient evidence in the record to support it. We decline, however, to affirm Farrell's conviction on the basis of a theory that the judge in the bench trial did not resolve one way or the other. Although it is proper for an appellate court to imply findings of fact that support a general finding of guilt in a non-jury trial where the evidence so warrants and the defendant has not requested special findings under Fed. R. Crim. P. 23(c), see, e.g., United States v. Powell, 973 F.2d 885, 889 (10th Cir. 1992); United States v. Musser, 873 F.2d 1513, 1519 (D.C. Cir. 1989), we have found no case suggesting that we can imply findings of fact relevant to a theory not addressed by the trial court, but irrelevant to the theory on which it predicated its ultimate finding of guilt. Cf. McCormick v. United States, 500 U.S. 257, 270 n.8 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory have been presented to the jury."); Chiarella v. United States, 445 U.S. 222, 236 (1980) ("[W]e cannot affirm a criminal conviction on the basis of a theory not presented to the jury."). Although McCormick and Chiarella were tried to juries and the rationale underlying them was the defendant's constitutional right to have a jury decide his guilt in the first instance, we find them persuasive here. Farrell had a right, akin to the right to a jury determination

12

of guilt, to have factfinding underlying his conviction performed by the court that heard all the testimony and saw all the evidence relevant to his case in thefirst instance. Accordingly, we will not independently review the

record before us and attempt to assess the evidence relevant to an alternative theory, not passed upon by the court below, upon which to uphold a conviction that we have found to be erroneous on the theory put forth by the district court.

We agree with the government, however, that there is evidence in the record which, if credited, would support its alternative theory. In these circumstances, we conclude that the appropriate course is to reverse the judgment of conviction and remand to provide an opportunity for the district judge who tried this case to review the existing record and make additional findings of fact. Cf. United States v. Livingston, 459 F.2d 797, 798 (3d Cir. 1972)(en banc)(remanding for findings of fact by district judge who had conducted a bench trial in a criminal case). If the court finds that Farrell attempted to persuade Bachetti to lie to the USDA investigators, it may reinstate the verdict of guilty on count three. If it finds to the contrary, it should enter a not guilty verdict on that count and resentence on the remaining counts. If, for any reason, the district judge is unable at this point to make a factual finding on this issue, the court should enter a not guilty verdict on count three and resentence on the remaining counts.

IV.

We will reverse Farrell's conviction for tampering with a witness and remand for further proceedings consistent with this opinion.

13

CAMPBELL, Senior Circuit Judge (Dissenting).

As I believe that Farrell attempted "corruptly to persuade" his co-conspirator, Bachetti, to withhold incriminating information from law enforcement authorities, I would affirm his conviction under 18 U.S.C. S 1512(b)(3) for witness-tampering. Both the legislative history of S 1512 and the relevant case law support the government's position that S 1512's "corruptly persuade" language means the same as the similar "corruptly" language in S 1503, a related statute, namely, persuasion that is motivated by an improper purpose. I do not agree with the majority that applying the "improper purpose" test to S 1512 leads to statutory redundancy. Nor do I agree that simply because Bachetti would have had a Fifth Amendment right to remain silent, Farrell's attempt to persuade him to remain silent, in order to shelter Farrell, was proper. I, therefore, respectfully dissent.

1. History and Construction of Section 1512

Section 1512 was enacted in 1982 to replace and expand
witness protection provisions that had earlier been
incorporated in 18 U.S.C. S 1503, the obstruction of justice
statute. While S 1512 took over the area of witness
protection, S 1503 continued to protect jurors and court
officers against intimidation and corrupt influence, as well
as to punish other obstructions of justice. Thus S 1503
punished, and continues to punish, anyone who "corruptly
. . . endeavors to influence, intimidate, or impede any . . .
juror, or [federal court] officer" or otherwise "corruptly" to
influence or obstruct the administration of justice.

Section 1512's "corrupt persuasion" language, the
language here in issue, was inserted by Congress in 1988.
The amendment appeared in the Anti-Drug Abuse Act of
1988 (ADAA), Pub. L. No. 100-690, 102 Stat. 4181. Senator
Biden, the ranking minority member of the Judiciary
Committee and the Senator who had taken the lead in
drafting the criminal provisions of the ADAA, stated that
the intention of the 1988 Amendments was "merely to
include in section 1512 the same protection of witnesses
from non-coercive influence that was (and is) found in
section 1503." 124 CONG. REC. S17300 (daily ed. Oct. 21,

14

1988) (statement of Senator Biden). At this time, Congress
would have been aware of the judicial precedent that had
developed around the "corruptly" language inS 1503.
Senator Biden and his legislative colleagues would have
known that courts, in construing S 1503, had defined
"corruptly" as meaning "motivated by an improper
purpose." See e.g., United States v. Cintolo, 818 F.2d 980,
990-91 (1st Cir. 1987); United States v. Fasolino, 586 F.2d
939, 941 (2d Cir. 1978); Martin v. United States, 166 F.2d
76, 79 (4th Cir. 1948) (approving a jury instruction that
defined "corruptly" as "with an improper motive").

Given this background, it is logical to attribute to the
"corruptly persuade" language in S 1512, as adopted by
Congress in 1988, the same well-established meaning
already attributed by the courts to the comparable
language in S 1503, i.e. "motivated by an improper
purpose." This is what was concluded by the Second
Circuit, the only court of appeals to have so far interpreted
this aspect of S 1512. The Second Circuit translated the
"improper purpose" standard from S 1503 to S 1512. United
States v. Thompson, 76 F.3d 442 (2d Cir. 1996). The
Second Circuit's interpretation fits well within Senator
Biden's statement, since it includes within S 1512

protection from non-coercive conduct analogous to that embraced within S 1503.

I cannot agree, therefore, with the majority's assertion that the legislative history does not provide "much assistance" in construing the "corruptly persuade" language in issue. Senator Biden's statement coupled with the fact that the witness-tampering provision of S 1512 evolved from S 1503, is strong evidence that Congress intended "corruptly persuade" in S 1512 to be construed in much the same manner as courts have construed similar phraseology in S 1503.

2. Adopting the "Improper Purpose" Test for Section 1512 does not Lead to Statutory Redundancy

The majority declines to follow the Second Circuit in Thompson because of its view that the disparate structures of the two statutes make such translation inappropriate. They state that the term "corruptly" provides the only intent

15

element of S 1503, whereas S 1512 contains explicit general and specific intent elements in addition to the term "corruptly." According to the majority, "construing `corruptly' to mean merely `for an improper purpose' (including those described in the statute) renders the term surplusage." Majority Op., at p. 10, citing Ratzlaf v. United States, 510 U.S. 135, 141 (1994).

However, interpreting "corruptly" to mean "motivated by an improper purpose" does not create statutory redundancy. It is true that many courts have loosely declared that the term "corruptly" in S 1503 "does not superimpose a special and additional element on the offense," United States v. Ogle, 613 F.2d 233, 239 (10th Cir. 1979), but rather includes any act "done with the purpose of obstructing justice," United States v. Rasheed, 663 F.2d 843, 852 (9th Cir. 1981). But such broad statements overlook that not all actions taken with the intent to hinder or obstruct justice necessarily violate S 1503 or S 1512. In such instances, the term "corruptly" can play an important role in limiting the reach of the statutes. For example, a mother urging her son, in his own interest, to claim his Fifth Amendment right to remain silent would hardly be acting "corruptly," that is, with an improper purpose. A newspaper attacking a particular prosecutor as going too far, or an altruistic citizen writing a letter to the prosecutor or the judge seeking clemency for the accused -- would be other examples where the corruption requirement, i.e., improper purpose, would limit prosecutions under both

statutes.

In United State v. Thompson, the court of appeals rejected the argument that by criminalizing corrupt persuasion, S 1512 violated Thompson's free speech rights. The court held that "[a] prohibition against corrupt acts `is clearly limited to . . . constitutionally unprotected and purportedly illicit activity.' " Thompson, 76 F.3d at 452 (quoting United States v. Jeter, 775 F.2d 670, 679 (6th Cir. 1985) (construing 18 U.S.C. S 1503 (1982)). See United States v. Fasolino, 449 F. Supp. 586 (W.D.N.Y.), aff'd, 586 F.2d 939 (2d Cir. 1978) (non-corrupt endeavors to influence a jurist do not violate S 1503). Because S 1512 does not prevent innocent conduct nor "lawful or constitutionally protected

16

speech," id., even if such conduct or speech has the effect of hindering an investigation, the term "corruptly" adds an important dimension to S 1512.

I, therefore, disagree with the majority's contention that to construe "corruptly" as meaning "with an improper purpose," simply duplicates the intent element already present in S 1512. "Corruptly" indicates that persuasion of another which is intended to hinder, delay or prevent communications to a law enforcement officer or judge is criminal only if the dimension of improper purpose can also be found.1

3. Farrell's Purpose when he Attempted to Prevent Bachetti
   from Communicating with Investigators was Improper

The majority declares that Farrell lacked the degree of culpability necessary to violate S 1512. The majority believes that Farrell's actions were not corrupt because Farrell was merely urging Bachetti to avail himself of his constitutional right against self-incrimination. The majority apparently sees Farrell's own interest in Bachetti's constitutional privilege as outweighing the right of society to "the information of citizens regarding the commission of a crime." Majority Op., at p. 8 n.3.

Bachetti could, indeed, have invoked his Fifth Amendment right and refused to cooperate with the investigation in order to protect himself. But nothing in this principle implies that Farrell is constitutionally entitled to try to persuade Bachetti to take the Fifth Amendment in order to protect Farrell himself. To the contrary, courts that have faced this issue have decided the other way,finding that behavior similar to Farrell's violates S 1503. For

_____

1. To be sure, "improper purpose" may not always be self-defining, and may require further analysis in some situations. One who withholds evidence of tax evasion in order to avoid supporting governmental policies he dislikes may (incorrectly) claim to have acted properly because of the purported purity of his motive. A newspaper that challenges a criminal prosecution may, in the eyes of some, be acting with an improper purpose, yet may still be protected by the First Amendment. Nonetheless, the fact that the meaning of "improper purpose" is not always utterly clear does not eliminate its utility in helping further define and limit the thrust of the statute.

17

example, in United States v. Cioffi, 493 F.2d 1111 (2d Cir. 1974), the defendant insisted that merely advising a witness to plead the Fifth Amendment could not constitute an obstruction of justice. The Second Circuit disagreed. Affirming a district court jury instruction, the court found that "one who . . . advises with corrupt motive a witness to take [the Fifth Amendment], can and does obstruct or influence the administration of justice." Id. at 1119. The court added that "[t]he lawful behavior of the person invoking the Amendment cannot be used to protect the criminal behavior of the inducer." Id.

Similarly, in Cole v. United States, 329 F.2d 437 (9th Cir. 1964), a Ninth Circuit case that interpreted the oldS 1503, the court noted that even an innocent act, such as claiming Fifth Amendment protection, "may make another a criminal who sees that the innocent act is accomplished for a corrupt purpose." Id. at 439-40. The court affirmed a jury finding that the defendant, who had advised several individuals to take the Fifth Amendment, illegally obstructed justice because his advice was given in order to benefit himself.

Nor does the fact that Farrell and Bachetti were co-conspirators affect this analysis. The court in United States v. Cortese, 568 F. Supp. 119 (M.D. Pa. 1983), faced a situation quite similar to Farrell. In Cortese, one coconspirator had claimed his Fifth Amendment privilege against self-incrimination before a grand jury. After declaring that the Fifth Amendment privilege is a "personal one," the court found that liability could attach if "a co-conspirator can be shown by . . . corrupt motive to have induced his ally to invoke the [Fifth Amendment] privilege." Id. at 129.

Farrell's purpose in the present matter was improper: he sought to induce Bachetti to withhold information regarding the commission of a crime in order to shield Farrell himself

from an honest investigation of what had occurred. Such self-interested behavior constitutes corrupt persuasion because it is "motivated by an improper purpose," i.e. a purpose different from Bachetti's personal constitutional right to remain silent. On the facts of this case, I believe that the district court properly ruled that Farrell violated

18

S 1512 by advising Bachetti to refuse to cooperate with investigators. I would affirm the judgment of the district court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

19