**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Fatemeh KHATAMI, aka Doris Khatami, Defendant–Appellant.**

No. 99–50700.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 18, 2001.*

Filed Feb. 5, 2002.

* We granted Khatami's unopposed motion to waive oral argument pursuant to Fed. R.App. P. 34(a), and ordered the case submitted on the briefs and the record.

**908**

James L. Waltz, Laguna Hills, CA, for the defendant-appellant.

John D. Early, Assistant United States Attorney, United States Attorney's Office, Santa Ana, CA, for the plaintiff-appellee.

Before: B. FLETCHER, D.W. NELSON, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge.

■ This case requires us to decide an issue of first impression in this circuit: whether 18 U.S.C. § 1512(b) prohibits non-coercive—non-threatening or non-physical—attempts to tamper with witnesses. Following a bench trial, the district court convicted Fatemeh Khatami ("Khatami") on two counts of witness tampering pursuant to 18 U.S.C. § 1512(b)(3).[1] Khatami argues on appeal that the evidence proffered by the government at trial was insufficient as a matter of law to sustain her conviction on those counts.[2]

We hold, in line with other circuits that have interpreted § 1512(b), that the "corruptly persuades" language of the statute encompasses non-coercive attempts by a target of a criminal investigation to tamper with prospective witnesses. Accordingly, the evidence was sufficient to support a judgment of guilt on those counts. We therefore affirm.

## BACKGROUND

Khatami filed for and received Social Security disability benefits over a seven-year period. Unbeknownst to the government, Khatami obtained the benefits through false statements on her applications that she did not have any independent sources of income. To the contrary, she earned a living during the period in question by babysitting children who lived in her neighborhood. She also worked as a substitute teacher, and, along with her husband, received proceeds from rental

---

1. Khatami also was convicted on five counts of theft of government property (Social Security disability benefits), in violation of 18 U.S.C. § 641, five counts of concealing and failing to disclose information, in violation of 42 U.S.C. § 1383a(a)(3), and two counts of making a false statement to obtain Social Security disability benefits, in violation of 42 U.S.C. § 1383a(a)(2). She does not appeal from her conviction on those twelve counts.

2. Although Khatami has already completed her term of incarceration, she has standing to challenge her witness tampering conviction because she is currently under a three-year supervised release term that could be affected if she were to prevail on appeal. *See United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 178, 151 L.Ed.2d 123 (2001).

property. Khatami also failed to disclose that she co-owned several bank accounts.

After a brief investigation, the Social Security Administration ("SSA") discovered that Khatami had made numerous misrepresentations in her applications, and terminated her disability benefits in July 1997. Approximately a year later, Terry Torrey, an SSA investigator, visited Khatami's residence to interview her about the fraudulent conduct. Khatami's husband greeted Torrey at the door, but refused to produce his wife for questioning once he was informed about the purpose of the visit.

Soon after the visit, Torrey contacted Colleen Crommett and John Neighbours, potential witnesses, to learn more about Khatami's undisclosed childcare services. Crommett had hired Khatami for an approximately four-month period in 1994 to babysit her daughter. Crommett paid Khatami approximately $150 to $250 per week via personal checks. Neighbours also paid her $250 per week for similar services.

Shortly after Crommett spoke with Torrey, Khatami called Crommett, a Deputy District Attorney in Orange County, California, to inform her about the SSA's investigation. During their telephone conversation, Khatami asked Crommett to tell the government investigator that she and Crommett were "simply friends," and that Crommett had never compensated Khatami for the babysitting services. Khatami also attempted to induce Crommett to lie by suggesting falsely that Crommett had paid Khatami cash for her services and, therefore, "no one would ever know" about their arrangements. Crommett told Khatami that she would not lie to the investigators. She also advised Khatami not to ask "anybody else to lie on her behalf."

Unfortunately, Khatami did not take Crommett's advice. Sometime after her conversation with Crommett, Khatami received a call from Neighbours who, after speaking with Torrey about the investigation, was curious about "what was going on." Khatami told Neighbours that he should not "tell them anything." She also told him to lie, stating he should "just tell them that we were friends." Less than a week later, Khatami again spoke with Neighbours by telephone and reiterated that he should not speak with the investigators. On this occasion, both Khatami and her husband were on the phone and, although Neighbours did not recollect their "exact quotable words," he testified that "they did not want me to say anything."

Khatami was indicted on two counts of witness tampering in violation of 18 U.S.C. § 1512(b)(3). The pertinent counts of the indictment alleged that Khatami had "knowingly attempted to corruptly persuade" Crommett and Neighbours to "withhold information from and to provide false information" to the SSA investigator.[3]

The district court presided over a two-day bench trial during which Crommett and Neighbours testified about Khatami's efforts to persuade them to mislead the SSA investigator. Following the close of evidence, the court found Khatami guilty on both counts of witness tampering. The district court did not explicitly set forth its construction of the phrase "knowingly attempted to corruptly persuade" as it appeared in counts 13 and 14 of the indictment or otherwise directly state whether

---

**3.** The government also alleged that Khatami's husband, Seyed, attempted to persuade Neighbours to lie to investigators. The district court acquitted Seyed on that count because, among other things, it was not persuaded beyond a reasonable doubt that Seyed had uttered the statements in question.

18 U.S.C. § 1512(b) applied to non-coercive witness tampering. After resolving various inferences and credibility issues in the government's favor, Khatami was found guilty based on the court's conclusion that the government had proved its case-in-chief on the tampering counts beyond a reasonable doubt. The district court then sentenced Khatami to a 21–month term of incarceration, followed by a three-year term of supervised release. She was also ordered to pay various penalties and make restitution to the government.

### STANDARDS OF REVIEW

■ Construction of the witness tampering provisions of 18 U.S.C. § 1512(b) is a question of law subject to de novo review. *See, e.g., United States v. Jackson,* 72 F.3d 1370, 1376 (9th Cir.1995). As for whether the evidence proffered by the government was sufficient to sustain Khatami's conviction on the § 1512(b)(3) counts, we view the evidence "in the light most favorable" to the government to determine "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Carpenter,* 95 F.3d 773, 775 (9th Cir.1996) (original emphasis) (internal quotation marks omitted). In reviewing the evidence, we are required to "respect the exclusive province of the [factfinder] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the [fact-finder] resolved all such matters in a manner which supports the verdict." *United States v. Goode,* 814 F.2d 1353, 1355 (9th Cir.1987) (internal quotation marks omitted).

### DISCUSSION

#### I. 18 U.S.C. § 1512(b)

Before we consider Khatami's sufficiency of the evidence challenge, we must first turn to the phrase "corruptly persuades" as it appears in 18 U.S.C. § 1512(b) to assess whether non-coercive witness tampering falls within its ambit.

Section 1512(b) reads as follows:

(b) Whoever knowingly uses intimidation or physical force, threatens, or *corruptly persuades* another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence, delay, or prevent the testimony of any person in an official legal proceeding;

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) *Hinder, delay or prevent the communication to a law enforcement officer* or judge of the United States *of information relating to the commission or possible commission of a Federal offense* or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than ten years or both.

18 U.S.C. § 1512(b) (emphasis added).

Because Khatami's witness tampering conviction arose solely out of non-coercive conduct directed toward Crommett and

Neighbours, the government prosecuted her based on the theory that she had attempted to corruptly persuade them to decline to speak with the SSA investigator and to mislead him with false information about Khatami's babysitting activities.

By its terms, § 1512(b) prohibits four specific categories of conduct directed toward witnesses: (1) intimidation, (2) physical force, (3) threats, and (4) corrupt persuasion. The first three groupings are easily categorized as conduct that is coercive in nature; one does not need to be a regular viewer of "The Sopranos" or other mass media depictions of criminal activity to understand that prospective witnesses who are affirmatively intimidated or threatened in advance of speaking with investigators may suffer dire consequences if they choose to talk. The phrase "corruptly persuades," however, has a decidedly different connotation. It can be readily hypothesized, for example, that friends of a target could be persuaded to furnish false information without being coerced or threatened into doing so.

■ Indeed, the ordinary meanings of the terms "corruptly" and "persuade" support this preliminary textual analysis. We turn to these ordinary meanings because Congress did not explicitly define the phrase "corruptly persuades" within the context of § 1512(b)(3). *See United States v. Mohrbacher,* 182 F.3d 1041, 1048 (9th Cir.1999); *see also United States v. King,* 244 F.3d 736, 740 (9th Cir.2001). The only statutory clue to this phrase's meaning comes in § 1515(a)(6), which notes rather circuitously (and unhelpfully) that it "does not include conduct which would be misleading conduct but for a lack of state of mind." Although the definition establishes that the government is required to prove scienter as an element of § 1512(b)(3), it does not discuss the type of conduct that

would constitute an attempt to corruptly persuade a potential witness.

Accordingly, we examine the ordinary meaning of "corruptly persuades," an inquiry that takes us to dictionaries and other etymological sources. *See King,* 244 F.3d at 740. In the legal context, "corrupt" means "[s]poiled; tainted, vitiated, depraved; debased; morally degenerate." *Black's Law Dictionary* 345 (6th ed.1990). The adverb "corruptly" has been defined by the *Oxford English Dictionary* to mean "[i]n a corrupt or depraved manner; pervertedly; by means of corruption or bribery." *Oxford English Dictionary* (2d ed.1989) (retrieved online at http://dictionary.oed.com H). The same dictionary defines the adjective "corrupt" as "[p]erverted from uprightness and fidelity in the discharge of duty; influenced by bribery or the like; venal." *Id.* Elsewhere, "corrupt" is defined as "characterized by improper conduct (as bribery or the selling of favors)," *Merriam Webster's Collegiate Dictionary* 261 (10th ed.1993). The verb "persuade" has many definitions, but within the context of § 1512(b)(3) can be understood to mean "to coax," *Oxford English Dictionary* (2d ed.1989); "to plead with," *Merriam Webster's Collegiate Dictionary* at 868; or "[t]o induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like; to win over by an appeal to one's reason and feelings, as into doing or believing something." *Black's Law Dictionary* at 1144–45.

Synthesizing these various definitions of "corrupt" and "persuade," we note the statute strongly suggests that one who attempts to "corruptly persuade" another is, given the pejorative plain meaning of the root adjective "corrupt," motivated by an inappropriate or improper purpose to convince another to engage in a course of behavior—such as impeding an ongoing

criminal investigation. There is nothing intrinsically coercive about such a process; rather, if we were to construe "corruptly persuade" to require coercion, we might impermissibly render that phrase redundant within the context of § 1512(b). *See Ratzlaf v. United States,* 510 U.S. 135, 140–41, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (construing a criminal statute so as to accord independent meaning to each of its constituent terms).

An analysis of the evolution of § 1512(b) from its predecessor statutes lends further support to our construction of the phrase "corruptly persuade." Prior to 1988, the words "corruptly persuade" did not appear in § 1512, a statutory section that was first codified in 1982 as part of the Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1249.[4] *See generally United States v. Ladum,* 141 F.3d 1328, 1337–38 (9th Cir.1998). Interpreting this early version of the statute, the Second Circuit held in *United States v. King,* 762 F.2d 232 (2d Cir.1985), that § 1512 did not criminalize a "nonmisleading, nonthreatening, nonintimidating attempt to have a person give false information to the government," and noted that Congress would have to amend the statute to "close the gap." *Id.* at 238. In 1988, Congress took up the Second Circuit's suggestion, and amended § 1512 to prohibit attempts to "corruptly persuade" a prospective witness to engage in certain obstructive activities. Anti Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4181.

We have previously suggested in dictum that the operative phrase "corruptly persuades" in § 1512(b) could be construed to encompass non-coercive efforts to tamper with witnesses. In *United States v. Kulc-*

*zyk,* 931 F.2d 542 (9th Cir.1991), a case involving a pre 1988 indictment containing multiple counts of witness tampering, we suggested in a footnote that the 1988 amendment would criminalize non-coercive conduct that was not encompassed within the original version of § 1512, such as where the defendant corruptly persuades the witness to testify falsely. *Id.* at 546 n. 7.

We next hinted at the issue in *United States v. Aguilar,* 21 F.3d 1475 (9th Cir. 1994) (en banc), *rev'd in part on other grounds,* 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995), in the context of reviewing a conviction under the more general obstruction of justice statute, 18 U.S.C. § 1503. We noted that Congress amended § 1512 in 1988 for the specific purpose of including "non-coercive witness tampering" within that section's ambit. *Id.* at 1485. Finally, in *Ladum,* we again addressed § 1512 in the context of a § 1503 conviction. In the course of holding that the amendment of § 1512 in 1988 did not eliminate witness tampering from the scope of § 1503, we quoted approvingly from a floor statement by Senator Joseph Biden who discussed Congress' intent to include non-coercive witness tampering within the scope of § 1512(b) so as to address the gap identified by the Second Circuit in *King* and to provide an explicit textual hook for prosecutors to use in addition to the more-broadly phrased omnibus language of § 1503. *Ladum,* 141 F.3d at 1337–38(quoting from 134 Cong. Rec. S17,-369 (1988)).

Other circuits that have addressed the scope of the statute have also concluded that § 1512(b) encompasses non-coercive attempts to tamper with witnesses. *See*

---

4. The preamble to the pre–1988 version of § 1512 was as follows:

(a) Whoever knowingly uses intimidation or physical force, or threatens another per-

son, or attempts to do so, or engages in misleading conduct toward another person, with intent to—. . . .

*United States v. Pennington,* 168 F.3d 1060, 1066 (8th Cir.1999) (affirming § 1512(b) conviction arising out of non-coercive witness tampering); *United States v. Shotts,* 145 F.3d 1289, 1299 1301 (11th Cir.1998) (same); *United States v. Morrison,* 98 F.3d 619, 629–30 (D.C.Cir. 1996) (same); *United States v. Thompson,* 76 F.3d 442, 452–53 (2d Cir.1996) (same). *See also United States v. Freeman,* 208 F.3d 332, 337–38(1st Cir.2000) (holding that statements made to witness were either coercive or corruptly persuasive); *United States v. Davis,* 183 F.3d 231, 249–50 (3d Cir.), *as amended by* 197 F.3d 662(3d Cir.1999) (holding that non-coercive statements would have supported a § 1512(b) conviction if not for an unrelated error by district court that warranted a remand for a new trial); *United States v. Farrell,* 126 F.3d 484, 488 (3d Cir.1997) (noting that "attempting to persuade someone to provide false information to federal investigators" would constitute "corrupt persuasion").

Attempting to persuade a witness to give false testimony and bribing a witness to withhold information are both forms of non-coercive conduct that fall within the reach of the statute as interpreted in the above-canvassed cases. *See, e.g., Davis,* 183 F.3d at 249. We note, however, that there is a difference in approach among the circuits about whether merely attempting to persuade a witness to withhold cooperation or not to disclose information to law enforcement officials—as opposed to actively lying—falls within the ambit of § 1512(b). The Third Circuit has held that such conduct does not necessarily run afoul of the statute: "We read the inclusion of 'corruptly' in § 1512(b) as necessarily implying that an individual can 'persuade' another not to disclose information to a law enforcement official with the intent of hindering an investigation without violating the statute, i.e., without doing so

'corruptly.'" *Farrell,* 126 F.3d at 489. *Farrell* involved a defendant discouraging a co-conspirator, who possessed a Fifth Amendment right to remain silent, from revealing information to the authorities. The Third Circuit held that this conduct did not violate the statute, but declined to express an opinion on whether discouraging disclosure of information from an individual who did not possess such a Fifth Amendment right would run afoul of § 1512(b). *Farrell,* 126 F.3d at 489 n. 3.

In *Davis,* the Third Circuit relied on *Farrell* for the proposition that "'more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure in order to hinder an investigation.'" *Davis,* 183 F.3d at 250 (quoting *Farrell,* 126 F.3d at 489). The court held that the defendant had satisfied the more stringent standard because he had suggested that a witness be killed and had asked for a gun so that he could kill the witness himself. *Davis,* 183 F.3d at 250.

The Eleventh Circuit, on the other hand, has expressly rejected *Farrell's* reasoning. In *Shotts,* the court held that the defendant's attempts to persuade his secretary not to speak with FBI agents were sufficiently culpable to sustain a conviction under § 1512(b). Noting that it was unwilling to follow the Third Circuit's lead in imposing a requirement for an additional level of culpability, the Eleventh Circuit concluded that there was sufficient evidence for the jury to have reasonably inferred that the defendant was attempting with an improper motive to persuade the witness not to talk to the FBI. *Shotts,* 145 F.3d at 1301.

■ We need not join in this debate to resolve the case before us. Given that there is sufficient evidence that Khatami (as discussed below) encouraged the wit-

ness to lie to the investigator, we need not reach the more difficult question of whether non-coercive attempts to persuade a witness not to disclose information to law enforcement officials or to decline to speak with law enforcement officials would run afoul of the statute. Accordingly, we join with all the other circuits that have considered this issue and hold that non-coercive attempts to persuade witnesses to lie to investigators violate 18 U.S.C. § 1512(b). On that basis, we affirm Khatami's convictions.

## II. Sufficiency of the Evidence

Khatami's sufficiency of the evidence argument boils down to a belief that urging a witness to lie simply cannot be enough to sustain a conviction. This argument is at odds with the statute, as outlined above. Viewing the evidence, as we must, in the light most favorable to the prosecution, we have little difficulty concluding that the conviction survives Khatami's challenge.

■ Specifically, Khatami argues that our dictum in *Aguilar* and the Third Circuit's decision in *Farrell* required the government to prove beyond a reasonable doubt that Khatami made an "active attempt" (i.e., calling to initiate the tampering) to persuade Neighbours to mislead the SSA investigator with false information. Similarly, she argues that the conviction cannot be sustained because there was no actual inducement as to either Neighbours or Crommett. We disagree.

As noted earlier, *Aguilar* involved an appeal from a conviction under § 1503. The defendant, who at the time was a district judge in the Northern District of California, had been convicted of making false statements to FBI agents who might have been potential witnesses. In construing § 1503, we found it helpful to evaluate the "corruptly persuades" language embodied in the post–1988 version "as a guide to interpreting the pre-amendment section 1503" that also prohibited certain forms of non-coercive witness tampering. *Aguilar*, 21 F.3d at 1486. We also provided various hypotheticals of situations that, we suggested, could violate § 1512(b). *Id.* Nowhere in that opinion, however, did we suggest that § 1512(b) required the defendant to be the one who first initiated contact with the prospective witness; nor does the statute suggest that such a rigid sequencing of events is a condition precedent to a § 1512(b) conviction.

*Farrell* is similarly unhelpful to Khatami's argument. There, the Third Circuit held that the defendant could not be convicted under § 1512(b) for attempting to persuade a prospective witness not to testify. *Farrell*, 126 F.3d at 488–89. In so holding, the Third Circuit construed § 1512(b) as follows:

> We read the inclusion of 'corruptly' in § 1512(b) as necessarily implying that an individual can 'persuade' another not to disclose information to a law enforcement officer with the intent of hindering an investigation without violating the statute, i.e., without doing so 'corruptly.' Thus, more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure in order to hinder an investigation.

*Id.* at 489. In *Davis*, the Third Circuit reaffirmed the scienter requirement set forth in *Farrell*, and held that the district court's jury instruction on a § 1512(b) count (defining "corruptly" as "having improper motive or purpose of obstructing justice") was error because "anyone with the intent to interfere with an investigation has 'improper' motives." *Davis*, 183 F.3d at 250 n. 6.

Although the Third Circuit in *Farrell* and *Davis* appears to establish a higher

level of scienter for a § 1512(b) conviction than have other circuits, those decisions do not aid Khatami because urging a witness to lie, as Khatami did, violates the statute as interpreted in both *Farrell* and *Davis.* *See Davis,* 183 F.3d at 249; *Farrell,* 126 F.3d at 488. And, neither case supports Khatami's argument that the defendant must actively initiate the tampering effort.

Again relying on *Farrell,* Khatami posits that the government has failed to prove the requisite level of scienter necessary to sustain a conviction under § 1512(b). She bases her argument on language stating that "more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure in order to hinder an investigation." *Farrell,* 126 F.3d at 489. Other circuits that have addressed § 1512(b)'s scienter requirement have concluded that the government must merely show that the defendant was motivated by an "improper purpose" when attempting to tamper with a prospective witness, and have not construed the phrase "corruptly persuades" as grafting an additional quantum of scienter onto the statutory provision. *See United States v. Thompson,* 76 F.3d 442, 452–53(2d Cir.1996); *United States v. Shotts,* 145 F.3d 1289, 1300–01 (11th Cir.1998). Here, however, the scienter debate is academic because the evidence is sufficient to establish that Khatami attempted to persuade both Neighbours and Crommett to lie to investigators. On that basis, we affirm Khatami's conviction on both counts.

Khatami finally claims that her conviction with respect to Neighbours cannot be sustained because the district court reached what she terms an "inconsistent" verdict by acquitting her husband on similar charges. The district court's conclusions, however, are well supported by the record and the facts are not identical in both cases. For example, Neighbours was asked repeatedly about the exact words that Khatami's husband allegedly used in his purported tampering efforts. Neighbours could not recall what they were. He did, however, have a clear recollection about Khatami's first conversation with him, and testified in general about a second conversation. The district court concluded that in view of the evidence related to the conversations and Khatami's demonstrated pattern of obstructionist conduct, the government proved beyond a reasonable doubt that Khatami had attempted to tamper with Neighbours. Construing all the evidence and inferences in the government's favor, we cannot say that the district court erred in reaching a split verdict with regard to the husband and wife.

### CONCLUSION

We affirm Khatami's conviction on two counts of attempted witness tampering under 18 U.S.C. § 1512(b)(3).

**AFFIRMED.**