**UNITED STATES of America, Appellee,**

v.

**Jay Russell DONOVAN, and Larry D. Bass, Appellants.**

**No. Crim.A. 00–56–RRM.**

United States District Court, D. Delaware.

July 5, 2001.

James E. Liguori, Liguori, Morris & Redding, Dover, Delaware, for appellants.

Edmond Falgowski, Assistant United States Attorney, Wilmington, Delaware, for appellee.

## MEMORANDUM OPINION

MCKELVIE, District Judge.

This is a criminal case. Larry D. Bass and Jay Russell Donovan are residents of

Milford, Delaware. On March 31, 2000, Magistrate Judge Mary Pat Thynge found Bass and Donovan guilty of two counts of violating state and federal fish and wildlife regulations pursuant to 16 U.S.C. § 3372(a)(2)(A), for transporting and selling in interstate commerce horseshoe crabs that were taken, possessed, and transported in violation of Delaware Shellfish Regulations S–53(a), S–54(b), and S–60. Judge Thynge also found Bass and Donovan guilty of violating 18 U.S.C § 371 for conspiring to violate 16 U.S.C. § 3372(a)(2)(A). On April 7, 2000, appellants filed a Notice of Appeal in the United States District Court for the District of Delaware. On July 19, 2000, Judge Thynge sentenced Bass and Donovan to probation for eighteen months and also imposed conditions of supervision and monetary assessments.

On October 20, 2000, Bass and Donovan filed an opening brief in support of their appeal claiming that the Magistrate Judge erred in finding that the horseshoe crabs were collected, transported, and sold in violation of Delaware Shellfish Regulations. On November 17, 2000, the United States filed an answering brief. On December 1, 2000, Bass and Donovan filed a reply brief. This is the court's decision on the appeal.

## I. *FACTUAL BACKGROUND*

The court takes the following facts from the briefs and its own independent review of the record.

In 1999, Larry D. Bass possessed a valid commercial eel fishing license, which allowed him to collect horseshoe crabs for personal, non-commercial uses and as bait. Jay Russell Donovan possessed a valid commercial horseshoe crab collectors' permit, which allowed him to collect and sell horseshoe crabs, up to certain statutory limits. Donovan is Bass's brother-in-law.

On June 3, 1999, at 11:00 a.m., Bass drove to Port Mahon, Delaware to collect horseshoe crabs to place into his eel pots as bait. Shortly thereafter, Donovan arrived and also started to collect crabs. Donovan planned to sell any crabs that he collected to a buyer in Virginia.

At 1:30 p.m., Sgt. Hennesey of the Delaware State Fish and Wildlife Division began to monitor Bass and Donovan. Hennesey testified that Bass and Donovan were near the water's edge directly behind Donovan's vehicle. Hennesey further testified that Bass threw one-half of the crabs on to the rocks directly behind Donovan's truck and the other half into an area between Bass's and Donovan's trucks. However, Hennesey testified that his view of the area between the trucks was obstructed.

Hennesey then testified that Bass proceeded into the obstructed area between Bass's and Donovan's trucks and soon thereafter, someone threw crabs into Donovan's truck. Nevertheless, Hennesey testified that he did not see who threw the crabs, but Hennesey said that only Donovan and a third crab collector were in view, while Bass was not. Moreover, Hennesey testified that no one else was in the vicinity of the truck. As a result, Hennesey presumed that Bass threw the crabs into Donovan's truck, an act that would violate Delaware Shellfish Regulations. As a result, Hennesey contacted other State Fish and Wildlife officers to assist him in further surveillance of Bass and Donovan. Conversely, both Bass and Donovan testified that Bass did not throw any crabs into Donovan's truck.

Bass then proceeded to Donovan's residence after collecting approximately 80 female horseshoe crabs. Bass testified that he went to Donovan's to pick up an unrelated item that Donovan was storing for

him. Soon thereafter, Donovan met Bass at his residence after collecting an adequate amount of male and female horseshoe crabs to sell. Hennesey testified that he followed Bass to keep both parties under surveillance.

After pulling into Donovan's driveway, Bass testified that he placed the female crabs into four trash barrels. Bass intended to use the crabs as bait for his eel pots. Thereafter, Bass and Donovan agreed that Bass would accompany Donovan to Virginia the next day to sell Donovan's crabs. Bass then left Donovan's residence, leaving behind the trash barrels of crabs.

On the morning of June 4, 1999, Bass and Donovan testified that they decided to collect additional crabs on private property in Kitts Hummock, so that Donovan would have a full load to sell in Virginia. However, because of a flat tire in Kitts Hummock, Bass and Donovan testified that they did not finish collecting crabs until later than they had planned. As a result, Bass testified that he missed high tide and he could no longer use the female horseshoe crabs as bait in his eel pots. Therefore, he decided to give them to Donovan. Bass and Donovan then loaded Bass's crabs into Donovan's truck.

Later that day, Bass and Donovan drove to Cheriton, Virginia, where Donovan sold the crabs to a commercial buyer for $1,105.98. After the sale, Virginia officials and Delaware Fish and Wildlife officers detained and questioned Bass and Donovan regarding the sale and seized the check as evidence. Thereafter, Bass and Donovan were charged with illegal sale of shellfish pursuant to 16 U.S.C. § 3372(a)(2)(A) and conspiracy to violate § 3372(a)(2)(A) pursuant to § 18 U.S.C. § 371.

## II. *JUDGE THYNGE'S VERDICT*

On February 24, 2000 and February 28, 2000, Magistrate Judge Thynge held a two day bench trial. On March 31, 2000, Judge Thynge found Bass and Donovan guilty of violating 16 U.S.C. § 3372(a)(2)(A) and conspiracy to violate § 3372(a)(2)(A) pursuant to 18 U.S.C. § 371. Under 16 U.S.C. § 3372(a)(2)(A), it is unlawful "to import, export, transport, sell, receive, acquire, or purchase in interstate ... commerce any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State...." The underlying state regulations that Judge Thynge found Bass and Donovan had violated were Delaware Shellfish Regulations S–53, S–54(b), and S–60.

### A. *Count One*

Delaware Shellfish Regulation S–53 makes it unlawful for any person with a valid horseshoe crab collecting permit to collect crabs with the assistance of anyone over the age of 16. Judge Thynge found that the government proved beyond a reasonable doubt that Donovan violated S–53 at Port Mahon on June 3rd, 1999, by having Bass assist him in the collection of crabs. Judge Thynge found it reasonable to believe that the crabs Sgt. Hennesey saw being thrown into Donovan's truck, were, in fact thrown by Bass.

Judge Thynge interpreted and understood Delaware Shellfish Regulation S–54(b) to be violated when a person possessing only a commercial eel fishing license collects horseshoe crabs not for "personal, non-commercial use, as bait for the licensee's eel pots fished in the state of Delaware." Thus, Judge Thynge found on the basis of Bass's own testimony that he violated S–54(b) when he transferred the crabs to Donovan on the morning of June 4th, 1999, for subsequent sale in Virginia.

Furthermore, Judge Thynge found that Donovan violated both 16 U.S.C

§ 3372(a)(2)(a) and 18 U.S.C. § 2[1] by transporting from Delaware and selling in Virginia horseshoe crabs collected by Bass in violation of state law, specifically Delaware Shellfish Regulation S–54(b). Judge Thynge also found that Bass violated both 16 U.S.C § 3372(a)(2)(a) and 18 U.S.C § 2 by assisting, or otherwise aiding Donovan sell in interstate commerce horseshoe crabs collected in violation of state law.

Delaware Shellfish Regulation S–60 makes it unlawful for anyone other than a holder of a valid horseshoe crab commercial collecting permit to sell, trade, and/or barter or to attempt to sell, trade and/or barter any horseshoe crab. Although Judge Thynge did not expressly explain how either Bass or Donovan violated S–60, the Magistrate Judge did state on the first page of her opinion that "defendants are charged with ... knowingly transporting and selling in interstate commerce ... horseshoe crabs, and in the exercise of due care should have known that the horseshoe crabs had been taken, possessed and transported in violation of state law, specifically ... Shellfish Regulations, S–53, S–54(b), and S–60."

### B. Count Two

Judge Thynge also ruled that the government proved beyond a reasonable doubt that, pursuant to 18 U.S.C. § 371, Donovan and Bass conspired to violate 16 U.S.C. § 3372(a)(2)(a). The Magistrate Judge found that an intent to agree and an actual agreement to conspire occurred between the defendants either on the evening of June 3rd or the morning of June 4th. This agreement provided that Bass would give to Donovan, and Donovan would accept the horseshoe crabs that Bass had collected and that Donovan would transport the crabs to Virginia for subsequent sale. Judge Thynge further found that overt acts in furtherance of the conspiracy occurred when Bass transferred the crabs to Donovan, during the transportation of the crabs from Delaware to Virginia, and upon the sale of the crabs in Virginia.

### III. DISCUSSION

A. *Did the Government Present Sufficient Evidence to Prove That Donovan Violated Delaware Shellfish Regulation S–53?*

■■■ Appellants first contend that the government did not present sufficient evidence to establish beyond a reasonable doubt that Donovan violated Delaware Shellfish Regulation S–53. This court applies a "particularly deferential" standard of review when deciding sufficiency of the evidence challenges. *See United States v. Dent*, 149 F.3d 180, 187 (3d Cir.1998). Moreover, the court does not weigh the evidence or determine the credibility of witnesses in reviewing a guilty verdict. *See Glasser v. U.S.*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In fact, the factfinder's credibility determinations may not be disturbed by an appellate court. *See Government of Virgin Islands v. Gereau*, 502 F.2d 914, 921 (3d Cir.1974).

■ Under Delaware Shellfish Regulation S–53(a), "[i]t shall be unlawful for any person with a valid horseshoe crab collecting permit when collecting horseshoe crabs to be assisted by more than three (3) persons who are not required to have valid

---

1. 18 U.S.C. § 2 states:
    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. 18 U.S.C. § 2.

horseshoe crab commercial collecting permits." Under S–53(b) only persons under the age of 16 are allowed to assist horseshoe crab licensees without a license themselves. Therefore, if Bass, older than 16, assisted Donovan in collecting horseshoe crabs, Donovan would be in violation of S–53(a). In interpreting S–53(a), Judge Thynge concluded that " 'collect' means to take live horseshoe crabs by any other means other than dredge," and that " 'assistance in collecting' can be rendered by the mere throwing of one or more crabs into the truck of a person possessing a valid horseshoe crab license by one not so licensed." A–531–32. Bass and Donovan do not challenge Judge Thynge's interpretations of S–53(a).

Judge Thynge concluded that Donovan violated S–53(a) on June 3, 1999, based on Sgt. Hennesey's testimony. Hennesey testified that although he did not directly witness Bass throw crabs into Donovan's truck, he did see crabs being thrown into the truck while Donovan and a third party were in view and Bass was not. Moreover, Hennesey testified that no one else in the vicinity at that time.

Donovan contends that Hennesey's testimony alone was insufficient to prove beyond a reasonable doubt that he violated S–53 because the testimony was not credible. In addition, Donovan claims that both his and Bass's testimonies, which state that Bass, at no time, threw crabs into Donovan's truck, were more credible. However, Judge Thynge found Hennesey's account of the incident to be the more credible testimony. Under *Gereau*, this court will not upset a credibility determination made by the lower court. *See Gereau*, 502 F.2d at 921. Therefore, this court will disturb the Judge Thynge's finding that Donovan violated S–53(a) by receiving assistance from Bass in collecting horseshoe crabs on June 3, 1999. More-

over, the court finds that Sgt. Hennesey's testimony was sufficient evidence to prove that Donovan violated Delaware Shellfish regulation S–53.

B. *Did The Magistrate Judge Correctly Interpret and Apply Delaware Shellfish Regulation S–54(b) to Bass?*

Delaware Shellfish Regulation S–54(b) states that "[a]ny person who has been issued a commercial eel fishing license . . . may collect horseshoe crabs . . . without a horseshoe crab . . . permit provided all horseshoe crabs taken are for personal, non-commercial use, as bait for the licensee's eel pots . . . ." Under Delaware Shellfish Regulation S–52 personal, non-commercial use means that the crabs will "be used as food, fertilizer, bait or otherwise properly disposed without . . . selling by individual or another, or without transporting shipping or causing to be transported or shipped out of state."

Bass contends that he did not violate Delaware Shellfish Regulation S–54(b) when he transferred the crabs to Donovan because he initially took the horseshoe crabs as bait for his eel pots, which is an acceptable personal use. Bass contends that S–54(b), if correctly interpreted, is not violated when an eel fishing licensee initially intends to use the crabs that he or she collected for a personal, non-commercial use, and only at a later time, transfers them to someone else for sale. Thus, Bass claims that only the original intent of the actor is important under S–54(b).

■ Interpretation of a statute is a question of law, and, as a result, is reviewed *de novo* on appeal. *See United States v. Hill*, 976 F.2d 132, 134 (3d Cir. 1992); 19 *Moore's Federal Practice* 206.04[1]. Judge Thynge interpreted S–54(b) to be violated when a person possessing only a commercial eel fishing licenses

takes horseshoe crabs not for "personal, non-commercial use, as bait for the licensee's eel pots fished in the state of Delaware." Judge Thynge found that Bass violated S–54(b) by transferring the crabs that he collected as bait to Donovan's on June 4, 1999, with knowledge that Donovan planned to sell them in Virginia.

■ Interestingly, Bass and Donovan's brief contains a different version of S–54(b), in which the last sentence reads "provided all horseshoe crabs *are taken* . . . ." versus the correct language "provided all horseshoe crabs *taken are* . . . ." The difference illustrates the meaning of the statute. As Bass and Donovan have characterized it, the wording of the statute focuses on the intent of the crab collector. However, the correct language focuses on the end result of the crabs. Here, the crabs ended up being sold, contrary to a personal use. As a result, this court agrees with the Magistrate Judge's interpretation of S–54(b) and her conclusion that Bass violated S–54(b).

### C. Did Bass violate Delaware Shellfish Regulation S–60?

■ The Appellants further contend that because Judge Thynge made special findings as to S–53 and S–54(b), but failed to do so in reference to S–60, the Magistrate Judge found that Delaware Shellfish Regulation S–60 had not been violated. Under Federal Rule of Criminal Procedure 23(c), "[i]n a case tried without a jury, the court shall make a general finding and shall in addition, on a request before the general finding, find the facts specifically." Thus, Judge Thynge was required to make only a general finding because Bass and Donovan did not request special findings of fact pursuant to Rule 23(c).[2]

■ Furthermore, when no special findings are made, an appellate court should imply findings supporting the judgment if the evidence, viewed in a light most favorable to the government, so warrants. *See United States v. Farrell*, 126 F.3d 484, 491 (3d Cir.1997). Bass contends that a finding that he violated S–60 can not be implied because the government did not present sufficient evidence to prove his guilt beyond a reasonable doubt. Delaware Shellfish Regulation S–60 states that it is "unlawful for any person who collects or dredges horseshoe crabs, except a person with a valid horseshoe crab commercial collecting permit or a person with a valid horseshoe crab dredge permit, to sell, trade and/or barter or attempt to sell, trade and/or barter any horseshoe crab." Bass claims that he did not violate S–60 because he only gave the crabs to Donovan and did not sell or attempt to sell them at any time.

■ After reviewing the evidence, this court finds that Bass violated S–60 by transferring the crabs to Donovan for subsequent sale. Bass transferred approximately 80 horseshoe crabs from bins to Donovan's truck at Donovan's residence. Moreover, Bass knew that Donovan planned to sell the crabs in Virginia later that day and Bass even accompanied Donovan to Virginia where he provided further assistance with the sale. Thus, it appears that the record contains sufficient evidence to support a finding that Bass sold or at the very least attempted to sell horseshoe crabs in violation of S–60. A–489.

### IV. CONCLUSION

As set forth above, this court finds that the Magistrate Judge's ruling that Bass

---

**2.** The court notes that in their reply brief Bass and Donovan state that they did make a request for special findings. However, the court is unable to find evidence of such a request in the record.

and Donovan violated state law, specifically Delaware Shellfish Regulations S–53, S–54(b), and S–60, was supported by sufficient evidence. Therefore, the court further finds that the Magistrate Judge correctly ruled that Bass and Donovan also violated federal violations, 16 U.S.C. § 3372(a)(2)(A) and 18 U.S.C. § 2. Moreover, because this court finds that there was sufficient evidence to prove Bass and Donovan violated Delaware Shellfish Regulations and 16 U.S.C. § 3372(a)(2)(A), the Magistrate Judge's decision that Bass and Donovan conspired to violate 16 U.S.C. § 3372(a)(2)(A), pursuant to 18 U.S.C. § 371, is also supported by sufficient evidence.

## ORDER AFFIRMING DECISION OF MAGISTRATE JUDGE

As set forth in the court's opinion of this date, IT IS HEREBY ORDERED that:

1. The Magistrate Judge's decision is affirmed.