# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

   v.

JUAN RICO DOSS,
    *Defendant-Appellant.*

No. 07-50334

D.C. No.
CR-05-00627-
SGL-01

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
March 9, 2009—Pasadena, California

Submission Vacated March 24, 2009
Resubmitted August 20, 2009

Submission Vacated January 4, 2010
Resubmitted December 1, 2010

Filed January 14, 2011
Amended March 15, 2011

Before: Michael Daly Hawkins, Marsha S. Berzon and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

Davina T. Chen (briefed and argued), Office of the Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Anne Voigts (argued) and Tammy C. Spertus (briefed), Office of the United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## ORDER

Appellant's Petition for Panel Rehearing is GRANTED for the limited purpose of amending footnote 11 of the Opinion, cited at 2011 WL 117628 (9th Cir. January 14, 2011).

The Opinion is hereby amended to add the following paragraph to the end of footnote 11:

> As part of these proceedings on remand, the district court is free to consider all legal or factual defenses raised by Doss to the imposition of the mandatory life sentence. *United States v. Kellington*, 217 F.3d 1084, 1092-95 (9th Cir. 2000). Should the court conclude that the mandatory life sentence is not required on Counts 4, 5, and 6, the court may, but is not required to, reconsider the life sentence imposed on Count 2. *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000).

No future petitions for rehearing or petitions for rehearing en banc will be accepted in this matter.

---

## OPINION

HAWKINS, Circuit Judge:

Juan Rico Doss ("Doss") appeals his conviction and life sentence for sex trafficking of children, transportation of minors into prostitution, conspiracy to commit those offenses, and two counts of witness tampering. The issue before us is whether one can be convicted for witness tampering under 18 U.S.C. § 1512 by encouraging a witness to withhold testimony when that witness possesses a legal right or privilege not to testify. Doss also contends that the district court erred in applying *Taylor*'s[1] modified categorical approach to find he

---

[1] *See Taylor v. United States*, 495 U.S. 575 (1990).

had a qualifying prior sex offense involving a child under the age of 17, thus requiring a life sentence pursuant to 18 U.S.C. § 3559(e). For the reasons that follow, we largely affirm, but the reversal of one count and an error in sentencing require vacatur and re-sentencing.

## FACTS AND PROCEDURAL HISTORY

Doss was indicted in 2005, along with his wife Jacquay Ford ("Ford"), for numerous counts of sex trafficking of children and transportation of minors into prostitution. At Doss's first trial, the government called a minor victim, C.F., as a witness, and she refused to testify. The government did not call Ford as a witness. A mistrial resulted when the jury was unable to reach a verdict.

A grand jury then issued a superseding indictment against Doss, adding three charges of witness tampering, involving C.F., Doss's wife, and a fellow prisoner, Mark Cohn. Count 7 alleged that Doss had tampered with juvenile witness C.F.:

> Between on or about April 11, 2006 and April 13, 2006 . . . defendant Juan Rico Doss knowingly used intimidation, threatened and corruptly persuaded, and attempted to intimidate, threaten and corruptly persuade C.F., with the intent to influence and prevent the testimony of C.F. in an official proceeding, and with the intent to cause and induce C.F. to withhold testimony from an official proceeding, namely, *United States v. Juan Rico Doss*, CR 05-627 (A) – ER.

> In so attempting, defendant Juan Rico Doss did things that were substantial steps toward intimidating, threatening and corruptly persuading C.F., including among other things, between on or about April 11, 2006 and April 13, 2006 when defendant Juan Rico Doss was transported with C.F. to or from

the official proceeding he told C.F., words to the effect that (1) if C.F. testified, everyone would get in trouble; and (2) if C.F. testified, it would be bad for C.F.

Count 8 alleged that Doss also tampered with his wife, Jacquay Ford:

> Between on or about May 16, 2006 and May 21, 2006, . . . defendant Juan Rico Doss knowingly corruptly persuaded, and attempted to corruptly persuade, Jacquay Quinn Ford with the intent to influence and prevent the testimony of Jacquay Quinn Ford in an official proceeding and with the intent to cause and induce Jacquay Quinn Ford to withhold testimony from an official proceeding, namely, *United States v. Juan Rico Doss*, CR 05-627(B) – SGL.

> In so attempting, defendant Juan Rico Doss did things that were substantial steps toward intimidating, threatening and corruptly persuading Jacquay Quinn Ford, including among other things: (1) in a letter dated May 16, 2006, defendant Juan Rico Doss encouraged Jacquay Quinn Ford to refuse to testify against him at trial by stating "Believe me if I got to go back to trial which is most likely I will if I don't get a 5 year deal, they are going to try you again to come testify which they made clear against me and if and when that time comes, I would expect you to hold strong and say NO that you won't even get on the stand period"; and (2) in letters dated May 16, 18, 21, 2006, defendant Juan Rico Doss encouraged Jacquay Quinn Ford to refuse to testify against him based on their marital status.

Doss moved to dismiss the witness tampering charges, contending they did not allege a crime because there was nothing

inherently corrupt about urging someone not under a compulsion to testify to exercise their right not to testify. He also filed a motion to sever the tampering charges from the remaining counts. The district court denied both motions.

At Doss's second trial, C.F. testified against Doss, as did Doss's wife, Ford. As evidence of Count 8, the Government offered three letters written by Doss to his wife. The letters were written while both were in custody on the charges in the present case; all references to Doss's first trial were redacted from the versions presented to the jury. At the time Doss wrote these letters, he was unaware that Ford had entered into a cooperation agreement with the Government; it appears that, at most, Ford had told Doss that she had agreed to plead guilty. The relevant language from the first of these letters is quoted in the indictment, above.

In a second letter, Doss notified Ford of his anticipated trial date, then wrote, "I sure wish you were going to trial with me. You know the decision is yours to fire your attorney and take your plea back." In the third letter, Doss wrote, "Jacquay as husband [and] wife we go through certain things and we sometimes have to make [and] take sacrifices for one another and remain strong together as one because we are one."

With respect to witness tampering in Count 7, witness C.F. and a fellow prisoner, Mark Cohn, testified in substantially similar detail regarding a conversation that occurred between Doss and C.F. C.F. testified that one day she was transported back from the courthouse on the same van as Doss. She was placed in the front of the van, but separated from the male inmates by a metal divider and could not see who was speaking. She testified she could not recognize the voice and that she could not remember many specifics of the conversation. She did testify that the person had stated he knew she was there "to lie on them," and that he had said something "about a guy named Broham," saying "Broham did it" repeatedly.

Broham was the name of C.F.'s pimp at the time she had met Doss.

Mark Cohn, another inmate who was transported from the courthouse during the same time frame for an unrelated matter, testified about overhearing a similar conversation. He described the layout of the van and accurately described C.F.'s appearance. Stating that he had been seated on the same side of the metal divider as Doss, Cohn identified Doss as the speaker. Cohn recalled the following about the conversation:

> It starts by 'Hey, girl, how old are you? and her response is, 'Hell young; 15.' His response is, 'I didn't know you were that young.'

> He proceeded to talk about, 'Are you going to testify?' and she says 'Yeah. That's why they brought me up here.' 'Well, you don't have to testify.'

> She says, 'Well, that's why I'm here. 'Well, nobody has to testify. You don't testify. You don't talk. Nobody talks." And then he said something like, 'It's all Broham."

> And that was repeated.

Doss moved for acquittal on all counts at the close of the government's case and again at the close of trial, and the district court reserved ruling on the motion pursuant to Fed. R. Crim. P. 29(b). The jury convicted Doss on all counts except for tampering with witness Mark Cohn.[2] The court denied Doss's renewed motion for judgment of acquittal.

---

[2] Count 9 had charged Doss with attempting to influence Cohn's testimony after overhearing the conversation between Doss and C.F. in the transport van, asking him to say that Doss did not initiate conversation with "that girl" and did not talk to "that girl."

Doss agreed to a bench trial on the issue of whether he had a "prior sex conviction in which a minor was the victim" under 18 U.S.C. § 3559(e)(3)(1), which would qualify him for a mandatory life sentence. Applying the modified categorical approach, the district court determined that Doss's prior Nevada conviction for pandering a child qualified for the enhancement. Doss received a life sentence on four of the prostitution counts, 480 months on another child prostitution count, and 120 months on the witness tampering counts, all to be served concurrently.

## DISCUSSION

### I. Witness Tampering

#### A. Factual/Legal Overview

[1] Doss argues that the district court erred by denying his motion to dismiss two witness tampering counts for failing to state a violation of 18 U.S.C. § 1512(b)(1), (2)(A) and/or by denying his motion for acquittal of these counts. We review questions of statutory interpretation de novo. *United States v. Horvath*, 492 F.3d 1075, 1077 (9th Cir. 2007). To evaluate Doss's claims, we must first consider exactly what sort of conduct is prohibited by this statute. These provisions criminally punish:

> (b) Whoever knowingly uses intimidation, threatens, or *corruptly persuades* another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> > (1) influence, delay, or prevent the testimony of any person in an official proceeding;
> >
> > (2) cause or induce any person to—

> (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

18 U.S.C. § 1512(b)(1), (2)(A) (emphasis added).

**[2]** The principal debate is over the meaning of the term "corruptly persuades." All courts considering the issue have found this phrase to be ambiguous. *United States v. Baldridge*, 559 F.3d 1126, 1142 (10th Cir. 2009). There is currently a circuit split over the type of conduct that falls within the ambit of this phrase. Two of our sister circuits conclude that persuasion with an "improper purpose" qualifies (such as self-interest in impeding an investigation), while another concludes there must be something more inherently wrongful about the persuasion (such as bribery or encouraging someone to testify falsely). *Compare United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996), *and United States v. Shotts*, 145 F.3d 1289, 1300-01 (11th Cir. 1998), *with United States v. Farrell*, 126 F.3d 484, 488 (3d Cir. 1997).

In *United States v. Khatami*, we recognized the circuit split, but ultimately decided not to resolve the issue there because the circuits were in agreement that, at a minimum, persuading a witness to affirmatively lie to investigators would violate § 1512(b). 280 F.3d 907, 913-14 (9th Cir. 2002).[3] This case, however, squarely presents the issue left open in *Khatami* and requires us to explore the boundaries of conduct covered by § 1512(b). We begin by considering the history of § 1512(b) and the relevant case law to date.

---

[3]The Tenth Circuit also recently confronted the issue, but likewise decided it need not resolve whether persuading a witness to exercise a Fifth Amendment right could support a § 1512 conviction, because, even assuming error, the evidence revealed that the defendant asked witnesses to lie. *United States v. Weiss*, ___ F.3d ___, 2010 WL 2911718, *7-8 (10th Cir. July 27, 2010).

Prior to 1982, federal witness tampering was covered only by 18 U.S.C. § 1503, a general obstruction of justice provision, which applied to persons who "corruptly, or by threats or force, or by any threatening letter or communication, endeavor[ed] to influence, intimidate, or impede" any grand juror, witness or court officer. In 1982, § 1512 was added to provide additional protection to witnesses in federal cases. Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, § 4, 96 Stat. 1248, 1249-50 (1982).

As initially enacted, § 1512 did not include the words "corruptly persuade," and courts thus concluded the section did not criminalize non-misleading, non-threatening, non-intimidating attempts to have a person give false information to the government. *See Khatami*, 280 F.3d at 912 (discussing history). In 1988, Congress attempted to close this gap by including the phrase "corruptly persuades." *Id.* (citing Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181).

The Second Circuit has construed "corruptly" to have the same meaning it did in § 1503 (the general obstruction statute), relying on prior cases that had interpreted the term to mean "motivated by an improper purpose." *Thompson*, 76 F.3d at 452. It approved jury instructions that defined "corruptly" as "to act deliberately for the purpose of improperly influencing or obstructing, or interfering with the administration of justice." *Id.* at 453.

In *Thompson*, there was evidence that the defendant had urged his co-conspirators to conceal information and testify falsely to minimize his role in the offense. Later, however, the Second Circuit expanded the reach of its holding, concluding that one could violate § 1512 by suggesting to a co-conspirator that he invoke his Fifth Amendment privilege because the defendant had a self-interested "improper purpose" in making the suggestion — to ensure the witness did

not implicate him. *United States v. Gotti*, 459 F.3d 296, 342-43 (2d Cir. 2006).

The Eleventh Circuit has embraced the Second Circuit's approach, concluding it is reasonable to interpret "corruptly" in § 1512 as a scienter requirement in the same manner as it had been in § 1503. *Shotts*, 145 F.3d at 1300-01. The Eleventh Circuit thus affirmed a witness tampering conviction of a defendant who was engaged in a shady bail bond business and attempted to persuade his secretary not to talk to law enforcement agents. *Id.* at 1301. The court concluded the jury could reasonably have inferred that Shotts "was attempting with an improper motive to persuade [the secretary] not to talk to the FBI." *Id.*

**[3]** The Third Circuit, however, takes a different tack. In *United States v. Farrell*, the defendant was charged under § 1512 for attempting to dissuade a co-conspirator from providing information to USDA investigators regarding a conspiracy to sell adulterated meat. *See* 126 F.3d at 486. The court reasoned that the phrase "corruptly persuades" cannot mean simply "persuades with the intent to hinder communication to law enforcement" because such an interpretation would render the word "corruptly" meaningless, as the statute already requires an intent to hinder an investigation or proceeding. *Id.* at 487. The court pointed out that the House Report gave two examples of "culpable corrupt persuasion" — if a defendant offered to financially reward a co-conspirator's silence (a bribe) or attempted to persuade a co-conspirator to lie to law enforcement about the defendant's involvement in the conspiracy. *Id.* at 488 (citing H.R. Rep. No. 100-169 at 12 & n.25 (1987)); *see also Baldridge*, 559 F.3d at 1142 (approvingly quoting *Farrell*).

**[4]** The Third Circuit thus read "the inclusion of 'corruptly' in § 1512(b) as necessarily implying that an individual can 'persuade' another not to disclose information to a law enforcement official with the intent of hindering an investiga-

tion without violating the statute, i.e., without doing so 'corruptly.' " *Farrell*, 126 F.3d at 489. It concluded that the statute did not reach "a noncoercive attempt to persuade a co-conspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the conspiracy to refrain, in accordance with that right, from volunteering information to investigators." *Id.* at 488. The court commented, however, without expressly deciding the issue, that in "the absence of a privilege, society has the right to the information of citizens regarding the commission of crime," and thus persuasion of those without a privilege might well have the requisite degree of culpability or corruptness. *Id.* at 489 n.3.

Finally, the Third Circuit expressly rejected the reasoning of *Thompson* because it did not find the use of "corruptly" in § 1503 sufficiently analogous to its use in § 1512(b) to justify construing the terms identically. *Id.* at 490. The court noted that "corruptly" in § 1503 had consistently been interpreted to provide the intent element of that section, which would otherwise have no mens rea element. *Id.* In contrast, § 1512 requires both "knowing" conduct and also specifically describes the necessary intent within the various subsections (e.g., with intent to influence, delay or prevent testimony, or with intent to cause a person to destroy evidence). *Id.*

As we consider which of these two competing approaches we should adopt, the Supreme Court's 2005 decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), offers some guidance. In *Arthur Andersen*, an accounting firm had been convicted under § 1512 for destruction of documents in connection with the Enron investigation. *Id.* at 698. Although factually a very different case, the Court made a number of observations about § 1512 with potential implications for this decision.

The Court focused its attention on what it means to "knowingly . . . corruptly persuade." The Court commented that:

the act underlying the conviction— "persua[sion]"— is by itself innocuous. Indeed, "persuad[ing]" a person "with intent to . . . cause" that person to "withhold" testimony or documents from a Government proceeding or Government official is not inherently malign. Consider, for instance, a mother who suggests to her son that he invoke his right against compelled self-incrimination, see U.S. Const., Amdt. 5, *or a wife who persuades her husband not to disclose marital confidences*, *see Trammel v. United States*, 445 U.S. 40 (1980).

*Id.* at 703-04 (emphasis added) (internal footnote omitted).[4]

*Arthur Andersen* explained that to convict the accounting company, the government had to prove the company "knowingly . . . corruptly persuaded" its employees to destroy the documents, as opposed to instructing its employees to comply with a valid document retention policy. Although the parties relied on interpretations of "corrupt" in §§ 1503 and 1505, the Supreme Court found these provisions lacked the modifier "knowingly," making any analogy "inexact." *Id*. at 706 n.9. "Knowingly," the Court explained, is associated with "awareness, understanding or consciousness," and "corruptly" is associated with "wrongful, immoral, depraved, or evil"; together they require "conscious[ness] of wrongdoing." *Id.* at 705-06. Finally, the Court rejected the jury instructions, which permitted the jury to convict if it found the company intended to "subvert, undermine, or impede" governmental factfinding, noting that under this definition there was no dishonesty required and that "anyone who innocently persuades another to withhold information from the Government" will impede the Government's progress. *Id.* at 707.

---

[4]*Trammel* held that apart from confidential communications (a privilege held by the accused spouse), a witness spouse holds the privilege to refuse to testify adversely and "may be neither compelled to testify nor foreclosed from testifying." 445 U.S. at 53.

## B. Count 8 (Witness Tampering re Doss's wife)

Relying on the Third Circuit's approach and the Supreme Court's dicta in *Arthur Andersen*, Doss argues there was nothing "corrupt" about persuading his wife to exercise her marital privilege not to testify, and that therefore the district court should have granted his motion for acquittal.[5] The government, however, asks this court to follow the Second and Eleventh Circuits' decisions, based on the "statutory language and the longstanding construction of similar terms in Section 1503(a)." The government also argues that although *Arthur Andersen* suggests that persuading a spouse not to testify is not *inherently* malign, it does not necessarily preclude finding that, in some situations, such persuasion can still be corrupt — i.e., if done for an improper purpose (such as self-interest) and with consciousness of wrongdoing.

[5] Although the language of § 1512 is ambiguous, we find the Third Circuit's reasoning the more persuasive and the most consistent with the Supreme Court's later analysis of § 1512 in *Arthur Andersen*. Although the Second and Eleventh Circuits relied heavily on prior interpretations of the word "corrupt" in § 1503, the Supreme Court found analogies to this section unhelpful because it did not also contain the modifier "knowingly." 544 U.S. at 706 n.9. This analysis is quite similar to the Third Circuit's observation that, unlike § 1503, § 1512 already has a mens rea element, "knowingly," and thus "corruptly persuades" must have an additional meaning. *Farrell*, 126 F.3d at 489-90.

---

[5]Doss also argues that the district court should have dismissed the indictment against him as to Counts 7 and 8. However, the indictment adequately tracked the statutory language, set forth the necessary elements of the offense, and included sufficient facts to inform Doss of the specific offense with which he was charged and to enable him to plead acquittal or prior conviction of the same offense. *See United States v. Bailey*, 444 U.S. 394, 414 (1980); *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003). The district court was required to accept the government's allegations as true. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

Further, the Third Circuit recognized that construing "corruptly" to mean "for an improper purpose"—especially if that improper purpose is to hinder an investigation or prosecution (which is already required by the statute) — is circular, essentially rendering the term "corruptly" surplusage. *Id.* at 489. The Supreme Court echos this concern in *Arthur Andersen*, pointing out that persuading someone with intent to cause them to withhold testimony is not "inherently malign," and, significant here, the Court *specifically referred to the marital privilege as an example*. 544 U.S. at 703-04 (citing *Trammel v. United States*, 445 U.S. 40 (1980)).

In addition, as the Third Circuit points out, the examples of non-coercive "corrupt" persuasion cited by the House Report were bribery and attempting to persuade a witness to lie, both actions easy to characterize as inherently wrong or immoral, and not actions which could be considered otherwise innocent persuasion. *See Farrell*, 126 F.3d at 488. The Supreme Court similarly noted that the term "corrupt" and "corruptly" are normally associated with "wrongful, immoral, depraved, or evil," and, when coupled with "knowingly" in § 1512, the government must show the defendant acted with "consciousness of wrongdoing." *Arthur Andersen*, 544 U.S. at 705-06. If it is not, as the Supreme Court indicates, "inherently malign" for a spouse to ask her husband to exercise the marital privilege (even though made with the intent to cause that person to withhold testimony), *id.* at 703-04, then a defendant could not be shown to act with "consciousness of *wrongdoing*" merely by asking a spouse to withhold testimony (that may properly be withheld under the marital privilege) absent some *other* wrongful conduct, such as coercion, intimidation, bribery, suborning perjury, etc. *Id.* at 706.

**[6]** We therefore conclude that the district court erred by failing to grant Doss's motion for acquittal of Count 8. In reviewing claims of sufficiency of the evidence, we review the evidence in the light most favorable to the government to determine "whether *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Khatami*, 280 F.3d at 910 (emphasis in original) (quotation omitted). The evidence at trial established only that Doss appealed to his wife to exercise her marital privilege not to testify against him.[6] As Doss's wife, Ford had the legal option not to testify, and thus Doss's request, without more, was insufficient to establish "corrupt" as opposed to innocent persuasion. *Cf. Arthur Andersen*, 544 U.S. at 703-04; *id.* at 706-07. Accordingly, we reverse Doss's conviction as to Count 8.

## C.   Count 7 (Witness Tampering with C.F.)

Doss argues that the district court also erred by failing to grant his motion for acquittal on Count 7, contending again that, consistent with the Third Circuit's approach, there was nothing inherently corrupt in persuading a co-conspirator to exercise a Fifth Amendment right validly possessed at the time of their encounter. Nonetheless, the indictment in this case alleges, and the evidence supports a finding, that Doss did more than innocently suggest C.F. exercise her constitutional rights.

**[7]** The indictment alleged Doss had made statements to the effect that "if C.F. testified, it would be bad for C.F.," which could be construed as a threat or attempt to intimidate C.F. (especially in light of the prior pimp/prostitute relationship between C.F. and Doss). Although there was no specific testimony that Doss made the statement "it would be bad for C.F.," both C.F. and Mark Cohn testified to a conversation in the transport van in which Doss repeatedly suggested to C.F. "it's all Broham." From their testimony and the context of Doss's statements, a rational jury could have inferred that Doss was attempting to persuade C.F. to lie in her testimony

---

[6]The government did not argue that Doss had threatened or intimidated Ford, which would of course otherwise violate § 1512.

and to blame her former pimp, Broham, instead of him.[7] As discussed above, under our decision in *Khatami*, non-coercive attempts to persuade a witness to lie are clearly covered by § 1512(b). 280 F.3d at 913-14; *see also Weiss*, 2010 WL 2911718 *7-8 (rejecting claim that defendant only encouraged witnesses to exercise their Fifth Amendment right because evidence indicated defendant asked witnesses to lie).

Doss argues that even if there was sufficient evidence for a conviction under § 1512 on Count 7, there was a fatal variance between the proof at trial and the facts alleged in the indictment. We review a variance claim de novo. *United States v. Sullivan*, 522 F.3d 967, 980 (9th Cir. 2008). A variance occurs where the facts presented at trial materially differ from those alleged in the indictment. *United States v. Montgomery*, 384 F.3d 1050, 1060 (9th Cir. 2004). However, a variance requires reversal only if it affects the defendant's substantial rights. *Id.*

**[8]** Here, there was no material variance. The indictment and proof at trial both described the encounter between Doss and C.F. on the transport van on the dates alleged. *See United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986) ("Insofar as the language of an indictment goes beyond alleging elements of the crime, it is mere surplusage that need not be proved."). The indictment alleged that Doss had "among other things" told C.F. "words to the effect that" if C.F. testified, everyone would get in trouble and that it would be bad

---

[7]Doss argues that the evidence showed Cohn was not transported the day Doss and C.F. were in the van together. However, there was conflicting testimony on this point; although the U.S. Marshals recalled only one time that Doss and C.F. were transported in the van together, believing C.F. was otherwise transported by car, C.F. testified the van transport occurred twice. The Marshals' records reveal only who was transported on what day, not the manner of transport. In reviewing sufficiency of the evidence, we must view the evidence in the light most favorable to the government, and a rational juror could have resolved the competing testimony in favor of C.F., especially in light of the corroboration by Cohn.

for C.F. C.F. did not specifically recall this part of the conversation, but she did recall hearing an individual telling her that "Broham did it," and Mark Cohn testified to hearing Doss make such remarks. The jury may have found, as it apparently did, that such remarks were intended to encourage C.F. to lie when she was to provide testimony.

Doss's argument appears to be that the government proved only that he had encouraged C.F. to provide false testimony, while the indictment only charged threats to influence her not to testify. He argues his defense was prejudiced because he intended to argue that stating "it would be bad for C.F." to testify was not actually a threat, and thus that there was nothing wrong with the conduct alleged in the indictment. But even if this distinction constituted a material variance, Doss's defense would have been substantially the same regardless of the specific "corrupt" remarks alleged. For example, Doss attempted to show that Cohn could not have been in the van with C.F. and Doss to have overheard the statements, that C.F. could not have heard Doss clearly through a metal barrier in the transport van, and that C.F. lacked a vivid memory of the conversation and was generally not a good witness. This tactic would apply regardless of the specific statements alleged in the indictment.

Doss relies on *United States v. Adamson*, 291 F.3d 606, 610, 616 (9th Cir. 2002), in which the government alleged a single misrepresentation but proved a different one, after affirmatively representing that the conduct alleged in the indictment was the sole basis for the prosecution. *See also United States v. Tsinhnahijinnie*, 112 F.3d 988, 989-90 (9th Cir. 1997) (fatal variance where indictment alleged 1992 sexual abuse on Indian reservation, but trial testimony placed abuse off the reservation in 1994). But the indictment language in this case is more forgiving, suggesting there could be other statements beyond those alleged. *See Adamson*, 291 F.3d at 616 ("If the indictment had not specified a different

particular misrepresentation, one might say the variance was benign.").

The indictment also sufficiently identified the time and place of the conversation to give Doss notice of what evidence might be presented at trial. *See United States v. Antonakeas*, 255 F.3d 714, 722 (9th Cir. 2001) (no fatal variance where the evidence at trial covered the facts and time frame alleged in indictment); *see also United States v. Momeni*, 991 F.2d 493, 495 (9th Cir. 1993) (no fatal variance where evidence showed defendant fraudulently used credit card at hotels in addition to the one charged in indictment in order to satisfy statutory minimum of $1000).

**[9]** In sum, the evidence at trial was sufficient to sustain a conviction on Count 7. Doss did more than merely ask his co-conspirator to exercise her Fifth Amendment right not to testify. Viewing the evidence in the light most favorable to the government, a rational juror could have inferred from the conversation in the transport van that Doss had asked C.F. to lie on the stand by blaming her former pimp instead of him. Persuading a witness to lie clearly runs afoul of § 1512, and we therefore affirm Doss's conviction of Count 7.

## II. Motion to Sever

Doss argued to the district court that he would be prejudiced from joinder of the witness tampering counts with the sex trafficking counts because the jury would become aware of his first trial. The court denied the motion but ordered the parties to refer to the first trial as an "official proceeding," and held that any potential prejudice could also be mitigated through jury instructions.

**[10]** We review the denial of a severance motion for an abuse of discretion. *United States v. Lewis*, 787 F.2d 1318, 1320 (9th Cir. 1986). A defendant must show that the failure

to sever rendered the trial "manifestly prejudicial" so that the defendant's right to a fair trial was violated. *Id.* at 1321.

On appeal, Doss contends the district court's precautions did not ensure a fair trial. He claims that even though any written references to the former trial were redacted and both sides consistently referred to the former trial as an "official proceeding," the jury must have been able to glean that the prior proceeding was a trial. Doss then further argues that even though the jury's knowledge of a prior trial would be only minimally prejudicial, the jury must have also discerned that there was some reason it was not supposed to know of the former trial, and that the conclusion the jury must have drawn was that Doss had tampered with witnesses at that trial.

Doss's conclusions are quite speculative. For example, Doss argues that the government equated official proceedings with trials in its opening statement. The government argued in its opening that "the defendant tampered with witnesses in official proceedings connected with this case" and that "one of the official proceedings is this very trial." The government correctly notes that because a trial is a type of official proceeding does not mean that all official proceedings are trials; they could also be hearings or grand jury appearances.

As the district court also noted below with respect to the redacted letters, "a seasoned attorney or a prosecutor would be able to fill in the blank" but the jurors were just as likely to think the deleted phrases were expletives. Finally, Doss's ultimate conclusion — that he was prejudiced because the jury must have not only discerned there was a prior trial, but also concluded that it ended in mistrial because of defendant's tampering — heaps on even more speculation.

**[11]** The district court did not abuse its discretion by denying Doss's motion to sever and implementing precautions to prevent the jury from learning of the previous trial. There is no allegation that the government or witnesses failed to com-

ply with the court's orders. There is thus no reason to think that the joinder was manifestly prejudicial or prevented Doss from having a fair trial. We affirm the district court's denial of the motion to sever.

## III. Vouching

**[12]** Doss alleges that the government improperly vouched for the credibility of its witnesses and its case in closing argument. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005) (quotation omitted). The inherent danger is that "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id.* at 1148 (*quoting United States v. Young*, 470 U.S. 1, 18-19 (1985)).

Because Doss did not object to the government's closing argument, we review his claim of improper vouching for plain error. *United States v. Williams*, 989 F.2d 1061, 1071-72 (9th Cir. 1993). We will reverse for plain error only if an error was obvious, affected substantial rights, and a miscarriage of justice would otherwise result. *United States v. Sayetsitty*, 107 F.3d 1405, 1411-12 (9th Cir. 1997).

Doss objects to two passages. The first occurred in the government's initial closing argument, in which the government was discussing the testimony of Mark Cohn:

> Now there's no question you have to consider Mark Cohn's testimony carefully. He's a convicted felon. The Government knows that. He's a fraudster, the Government knows that. The Government prosecuted him and convicted him of fraud. The Government is investigating, and he's cooperating with that

> investigation, but you heard him say he's going to be pleading guilty to certain charges and he's going to be prosecuted again in connection with fraud. There's no question that Mark Cohn's testimony has to be considered carefully.

> But think of it this way: That's why the Government has prosecuted and convicted him, and that's why the Government is going to be charging him again. But that's also why he was uniquely situated to be where he was, and to see and hear what he did. Because that's who was in the transport van: inmates.

Doss characterizes this argument as telling the jurors that the government knew when Mr. Cohn was lying and when he was not. Doss also argues that it conveyed the impression that the government investigates and prosecutes people who are guilty, implying that the very fact Doss was on trial was evidence of his guilt.

**[13]** This characterization reads too much into the government's argument. Cohn's credibility at trial had been attacked on cross-examination and by the defense in its opening statements. The government's argument acknowledged that Cohn was not a perfect witness and that he had a history of lying and fraud. However, the government then pointed out that it was because of Cohn's crimes that he was in a position to overhear the conversation between Doss and C.F., while being transported in an inmate van. Nothing in this passage vouched for Cohn's credibility. *Compare United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (prosecutor described witnesses as "very candid" and "honest").

The second passage to which Doss objects occurred during the government's rebuttal:

> Wow, what a Government conspiracy!

The Government has nothing better to do than to pressure people to get all on the same page and to make them come into a courtroom and lie just so that we can convict an innocent person.

. . . .

I won't address every single point that defense counsel made. But for you to believe the defense in this case, you have to believe that the Government just wants to pressure witnesses to get up on the stand and all get in line on the same story to convict an innocent man, and that the government wants to pull in this fraudster, this completely unrelated individual in jail, to come in and lie to you as well.

However, Doss omits a substantial portion of the argument in between these two passages, in which the government argued:

For you to believe the defense, you have to believe that Tamica, Candace, and Jacquay are all lying to you. They are not the perfect witnesses. But they are the perfect victims. And the defense can't have it both ways. They point to their inconsistencies and tell you, 'they can't possibly be telling you the truth.' But when the tales of what happened to them and how the defendant transported them for purposes of prostitution match up consistently and match up with the corroborating evidence, then it's a government conspiracy to get these people in here and put pressure on all of these other people to lie to you so that we can convict an innocent man.

Ask yourselves if that makes any sense. Ask yourselves if it makes any sense for these two girls to come in here and testify and just make up this story. And supposedly, it's to protect their own pimp.

You heard from Detective Haight. Yes, it's true, initially sometimes girls on the street, the prostitutes that are working on the tracks, don't readily identify their pimps. And you heard from him that oftentimes they do. But this case is not just resting on the testimony of Tamica and Candice in connection with what they told you about how the defendant transported them between states to work as prostitutes for him. There's all of the corroborating evidence in the case. And the defense just dismisses it.

**[14]** Viewed in context and in their entirety, the government's comments were therefore responsive to the defense's closing argument, in which counsel argued "Ms. Doss is here today because of lies. *And those lies have three sources: the pimp's game, the government's pressure, and one con man's depravity*." (emphasis added). Defense counsel had also argued:

Now, the pressure in this case was tremendous. *The power of the United States Attorney's office has few boundaries.* And in this case, its tentacles reach into the relationship between a husband and his wife; between a 15-year-old girl and her freedom; and it even tried to convert a known con man into a star witness.

(emphasis added). And again:

There's another kind of pressure that's going on in this case, which is *the pressure that the government puts on itself to win*. And that pressure led to the very unfortunate decision to enlist a con man to convict Mr. Doss, *to prop up baseless accusations of witness tampering*, accusations that are not supported by the supposed victims of the tampering.

(emphasis added).

**[15]** "[A] prosecutor may respond substantially to a defense counsel's attack in order to right the scale." *United States v. Parker*, 991 F.2d 1493, 1498 n.1 (9th Cir. 1993) (internal quotation marks and citation omitted). When the government's rebuttal remarks are placed in context, both within its own argument and the closing arguments as a whole, it is apparent that the government was responding to the defense's allegations that the government had "cooked" the case in order to win. *See, e.g.*, *Sayetsitty*, 107 F.3d at 1409 (closing argument appropriate response to defense counsel's characterization that case was "web of deception"). In addition, rather than arguing that the jury should trust the government witnesses (as in *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999)), the government asked the jury to exercise its own judgment and determine the plausibility of the defense's explanation in light of the substantial corroboration among the various witnesses.

**[16]** The government concedes that its sarcastic comment "the government has nothing better to do than to pressure people to get all on the same page" could have been better phrased, but, in context, we agree these words were merely "rhetorical emphasis for the inferences the prosecutor was urging the jury to draw rather than a meaningful personal assurance that the [defendant was] guilty." *Williams*, 989 F.2d at 1072. We are also mindful that we should not assume the prosecutor means a remark to have its most damaging meaning, "or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *United States v. Leon-Reyes*, 177 F.3d 816, 822-23 (9th Cir. 1999) (internal quotation omitted).

Finally, even if some of the government's comments were improper vouching, these unobjected-to comments do not rise to the level of plain error resulting in a miscarriage of justice. There was extensive evidence in support of the child prostitution counts, including the testimony of the two victims and Doss's wife, which was also independently corroborated by

numerous telephone, motel and car records. As discussed above, C.F. and Cohn corroborated one another regarding Count 7 witness tampering, and this testimony was also independently supported by prison transport records. There was no reversible error in the closing argument.

## IV.   Sentencing

**[17]** Under 18 U.S.C. § 3559(e)(1) a "person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim. . . ." The statute defines a "minor" as "an individual who has not attained the age of 17 years." *Id.* § 3559(e)(2)(D).

The district court applied the enhancement to Doss and sentenced him to life in prison because of a prior child pandering conviction in Nevada. Nev. Rev. Stat. § 201.300(1)(a).[8] The court acknowledged that the crime did not categorically qualify for the federal enhancement because Nevada law defines a child as "a person less than 18 years of age," Nev. Rev. Stat. § 201.295(2), whereas federal law defines a minor as under 17 years of age. The court thus turned to the modified categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), and examined the charging documents, plea agreement and plea colloquy from Doss's state court conviction. The court concluded that Doss had admitted to pandering a child who was 16 years of age,[9] and that the state conviction thus satisfied the requirements of § 3559(e).

---

[8]The state court information alleged a violation of 201.300(1)(a), which applies to pandering both adults and children. However, the crime carries different penalties based on whether a child or adult is involved, and Doss pled guilty to "pandering a child (Category B felony)," which is consistent with the penalties for pandering someone under 18 in Nevada. Nev. Rev. Stat. § 201.300(2)(b).

[9]Count I of the state information alleged that Doss "did . . . wilfully, unlawfully and feloniously, induce, persuade, encourage, inveigle, entice

At the time of the district court's decision in 2006, its modified categorical analysis was likely correct. However, several subsequent cases have called the approach into question. As a preliminary matter, when making a generic crime determination, even under the modified categorical approach, our current law precludes the use of Doss's factual admissions regarding the age of one child because it was not necessary to the conviction under Nevada state law. *See Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc) (explaining that analogous admissions could not be used "to modify the crime because they were not necessary for a conviction"); *see also Aguilar-Turcios v. Holder*, 582 F.3d 1093, 1097-98 (9th Cir. 2009); *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1159-60 (9th Cir. 2008) (en banc) (modified categorical approach is only available in divisible statute to determine under which section defendant was convicted); *United States v. Jennings*, 515 F.3d 980, 992 (9th Cir. 2008).

However, these cases are not outcome-determinative here because a recent Supreme Court decision further alters the legal landscape. In *Nijhawan v. Holder*, the Supreme Court

---

or compel a child under the age of 18 years, to wit: [A.D.], being 16 years of age, and/or [Z.C.], to become a prostitute and/or to engage in or continue to engage in prostitution." Count II alleged similar conduct with two additional 17 year olds. In the plea agreement, Doss pled guilty to both counts "as more fully alleged in the charging document" and indicated he understood that "by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in Exhibit "1" [the charging instrument]."

At the plea colloquy, Doss admitted, "I enticed four juveniles in this Complaint to continue to act as prostitutes." His attorney then spelled the names of the two girls from count one for the court reporter (A.D. and Z.C.), and the court clarified: "As to Count I, you enticed these two young ladies to work as prostitutes, is that correct?" Doss responded, "Yes, to continue to work, yes." Based on all of this information, the district court concluded that although the information charged in the alternative, at the plea colloquy Doss admitted pandering *both* girls, including A.D., who was alleged to be 16 at the time of the crime, and that therefore the conviction qualified under § 3559(e).

analyzed a list of aggravated felonies under immigration law, categorizing as an aggravated felony "an offense that involves fraud or deceit *in which the loss to the victim or victims exceeds $10,000*." 129 S. Ct. 2294, 2298 (2009) (emphasis in original); 8 U.S.C. § 1101(a)(43)(M)(I). The Court distinguished between generic crimes (in which a court would look to the offense statute to determine if there was an appropriate monetary threshold as an element of the underlying offense) and "circumstance-specific" crimes, which would instead look to the facts and circumstances underlying an offender's conviction. *Id.* at 2298-99. The Court concluded that subparagraph (M)(I) was the latter, noting that:

> The language of the provision is consistent with a circumstance-specific approach. The words "in which" (which modify "offense") can refer to the conduct involved "*in*" the commission of the offense of conviction, rather than to the elements *of* the offense.

*Id.* at 2301.

The sentencing enhancement at play here, 18 U.S.C. § 3559(e)(1), contains similar language. It provides for a mandatory minimum life sentence for a federal sex offense of the type of which Doss was convicted *if* the defendant has a "prior sex conviction *in which a minor was the victim*." As in *Nijhawan*, the clause "in which a minor was the victim" modifies "prior sex conviction" but is not necessarily an element *of* that prior offense.[10] Instead, the language suggests we are to consider "the specific circumstances surrounding an offender's commission of [that crime] on a specific occasion." *Nijhawan,* 129 S. Ct. at 2302.

---

[10]Doss does not otherwise dispute that his prior sex offense would qualify as a "prior sex conviction" except for the victim's age.

In *Nijhawan*, the Court also looked to the remainder of the statute, noting that the language of various other provisions "almost certainly does not refer to generic crimes but refers to specific circumstances." *Id.* at 2300-01. Likewise, § 3559(e) has other indications that it too is circumstance-dependent. For example, it provides that an otherwise qualifying felony cannot serve as the basis for sentencing if the defendant establishes that the sexual activity "was consensual and not for the purpose of commercial or pecuniary gain"—something that could not be determined by a mere comparison of generic elements or even under the modified categorical approach.

As the government argued to the district court, § 3559(e) presents a "hybrid" situation. The first portion of the sentencing enhancement—whether defendant has a prior "sex offense" conviction—involves the traditional *Taylor* approach and a comparison of generic elements. However, in light of *Nijhawan*, we conclude that Congress intended courts applying § 3559(e) to then look to the specific circumstances of that conviction to determine whether it involved a minor (and whether the defendant's defenses described above might also apply given the particular circumstances of the prior conviction).

**[18]** Nonetheless, we also recognize that *Nijhawan* was an immigration case, and although we believe its reasoning is equally applicable to § 3559(e), the constitutional ramifications are decidedly different. Because we conclude that "in which a minor was the victim" is not an element of "prior sex conviction," a factual determination that a minor was involved necessarily falls outside the "fact of a prior conviction" exception of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Thus, if this fact increases the penalty Doss would face above the statutory maximum, it must be proven to a factfinder beyond a reasonable doubt. *Id.*; *see also Nijhawan*, 129 S. Ct. at 2302 (government conceding that in a criminal

proceeding for illegal reentry the loss amount would need to be submitted to a jury).

The mandatory life sentence enhancement pursuant to § 3559(e) was applied to Doss's convictions on Counts 4, 5, and 6 for violations of 18 U.S.C. § 2423. Although § 2423 currently provides for a maximum term of life in prison, at the time of Doss's crime, the statute provided a statutory maximum of 30 years in prison, 18 U.S.C. § 2423 (2000), *amended by* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 204, 120 Stat. 587, 613, and thus *Apprendi* applies.

**[19]** In this case Doss waived a jury determination and proceeded to a "bench trial" for sentencing. However, our review of the proceeding makes it clear that although the government sought a factfinding sentencing trial and wished to introduce evidence in that proceeding, such as birth certificates of the two victims from the Nevada conviction, the district court instead based its decision entirely on legal grounds —application of the *Taylor/Shepard* modified categorical approach—and did not undertake any specific factfinding (an approach that was perfectly understandable given the law at the time). Under these circumstances, especially considering the significant change in law since the sentencing, we believe the fairest approach would be to remand Counts 4, 5, and 6 for a new sentencing proceeding to determine, applying a beyond-a-reasonable-doubt standard, whether Doss's prior sex conviction indeed involved a minor under the federal definition.[11]

---

[11]We note that, because this determination is outside the *Taylor/Shepard* framework, the factfinder's determination of whether the prior conviction involved a minor under the age of 17 need not be limited to the documents involved in a generic offense inquiry, but that the court or jury may consider any competent evidence that may be introduced under the Federal Rules, as with any other sentencing enhancement that increases the statutory maximum. *Cf. Nijhawan*, 129 S. Ct. at 2302-03.

## CONCLUSION

Doss's convictions are **AFFIRMED**, except for Count 8, which is **REVERSED**. Doss's life sentences on Counts 4, 5 and 6 are **VACATED and REMANDED** for further proceedings in accordance with this Opinion.

---

As part of these proceedings on remand, the district court is free to consider all legal or factual defenses raised by Doss to the imposition of the mandatory life sentence. *United States v. Kellington*, 217 F.3d 1084, 1092-95 (9th Cir. 2000). Should the court conclude that the mandatory life sentence is not required on Counts 4, 5, and 6, the court may, but is not required to, reconsider the life sentence imposed on Count 2. *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000).